Frank OTTMAN, Appellant,

v.

STATE of Indiana, Appellee.

No. 1278S282.

Supreme Court of Indiana.

Dec. 7, 1979.

Harriette Bailey Conn, Public Defender, Ihor N. Boyko, Deputy Public Defender, Indianapolis, for appellant.

Theodore L. Sendak, Atty. Gen., Richard Albert Alford, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

On November 3, 1966, defendant-appellant Frank Ottman was charged .in Lake Superior Court, Criminal Division, with first degree murder, Ind.Stat.Ann. § 10–3401 (Burns 1956 Repl.) (current version at Ind.Code § 35–42–1–1 (Burns 1979 Repl.). He waived his right to a jury trial and was tried by the court. Appellant was found guilty of first degree murder on March 17, 1967, and sentenced to life imprisonment. The inordinate length of time it has taken this cause to reach the appellate level was occasioned by appellant's own actions. Since his conviction, he has continually filed post-trial motions and withdrawn them, hired lawyers and discharged them, filed *pro se* appearances and motions, and then hired other attorneys or requested pauper counsel appointments with requests to file amended belated motions for appeal and post-conviction relief. Appellant raises no question concerning these various manoeuvers, and claims no error on the basis of the length of time it has taken his appeal to reach this Court. We point out these facts only to explain the unusual passage of time that becomes apparent when examining this record.

Appellant's complex and extended post-conviction pleadings culminated in motions for post-conviction relief under P.C. 1 and P.C. 2(a). These petitions were consolidated by the court and on February 24, 1978, the court heard evidence and denied both of the motions. Appellant raises two issues in this appeal, concerning: (1) whether the evidence is sufficient to support a conviction for first degree murder; and (2) whether appellant was adequately represented by counsel.

I.

Appellant does not deny that he did, in fact, kill Lathey Spigner by shooting him five times with a pistol. The evidence revealed that prior to the shooting appellant Ottman and Spigner had made a bet concerning the number of floors in a building in Los Angeles, California. Apparently the resolution of the wager was that appellant's position was correct, and Spigner refused to pay. As payment of the debt, Ottman was supposed to receive the Cadillac automobile in which Spigner was later killed. Appellant and Spigner argued about the payment of the wager debt and that appellant stated, "If that's the way you're going to do it, then you'll have to suffer the consequences." He then pulled out a gun and shot Spigner five times. Appellant ran from the scene, throwing his coat down by the car and dropping the gun in the street. He took refuge in a building very close to the scene. Within minutes, the police began to close in on him in the building, and appellant then surrendered, admitting that he was the one who shot Spigner. Appellant recovered the gun from the street and gave it to the police. He also acknowledged that his coat was lying by the car. Appellant now asserts there was not sufficient evidence that he killed Spigner with the requisite premeditated malice. He argues that, at most, he should have been found guilty of voluntary manslaughter.

It has been clearly established that there need be no showing of an appreciable length of time preceding the act itself for premeditation to form in the mind. *Chambers v. State*, (1979) Ind., 392 N.E.2d 1156, 1161; *Holt v. State*, (1977) 266 Ind. 586, 595, 365 N.E.2d 1209, 1214. We held in

*Brewer v. State*, (1969) 253 Ind. 154, 166, 252 N.E.2d 429, 436: "As to premeditation, the formation of the intention to kill and the killing may be as instantaneous as successive thoughts." Moreover, whether premeditated malice was proved beyond a reasonable doubt is a question of fact to be determined by the trier of fact. Accordingly, we first note that when an issue is raised concerning the sufficiency of the evidence, this Court will consider only that evidence most favorable to the State, together with all logical and reasonable inferences to be drawn therefrom. *Brewer v. State*, (1979) Ind., 390 N.E.2d 648, 653; *Ruetz v. State*, (1978) Ind., 373 N.E.2d 152, 156. Further, it is not our function to weigh the evidence or determine the credibility of the witnesses. *Love v. State*, (1979) Ind., 393 N.E.2d 176, 180; *Taggart v. State*, (1979) Ind., 390 N.E.2d 657, 659. With these standards in mind, we now turn to the facts of the case before us.

█ The evidence shows that appellant and Spigner argued about the merits of the payoff on the wager over a period covering two days. Ottman was demanding payment and Spigner refused to pay. Although in the early stages of making the bet, Spigner apparently told appellant Ottman that if Spigner won and Ottman failed to pay off, Spigner would "fill him full of holes," appellant does not claim that the shooting was occasioned by violence or threats made by Spigner at the time of the incident. This ongoing argument over the debt culminated in appellant Ottman stating to Spigner that if he was not going to pay off he would suffer the consequences. He then shot Spigner. Thus, we think there was sufficient evidence for the court, as trier of fact, to find beyond a reasonable doubt that appellant did kill Spigner with premeditated malice. There is no error here.

## II.

Appellant claims he did not receive adequate representation from his counsel at trial. As grounds for this assertion, he points to three different instances which, he alleges, demonstrate such inadequacy.

█ We note at the outset of our discussion that there is a presumption that counsel has been competent, and strong and convincing evidence is required to rebut this presumption. The burden is on appellant to show that what the attorney did or did not do made the proceedings a mockery of justice shocking to the conscience of the reviewing court. In making this assessment, we will not second-guess tactics or strategy. *Riner v. State*, (1979) Ind., 394 N.E.2d 140, 143; *Lenoir v. State*, (1978) 267 Ind. 212, 214, 368 N.E.2d 1356, 1357–58. We have also held that the question of incompetency of counsel revolves around the particular facts of each case. *Roberts v. State*, (1977) 266 Ind. 72, 80, 360 N.E.2d 825, 829.

█ The first complaint appellant makes regarding his attorney's representation at trial was his failure to object to testimony from one witness concerning three bullet holes in the windshield of Spigner's Cadillac. This is the automobile in which Spigner was shot. Appellant's complaint hinges on the proposition that the witnesses testifying about this matter may have implied that appellant was responsible for these bullet holes and thereby prejudiced the trial court against him. The presence of the three bullet holes in the windshield was revealed in the testimony of witnesses who described the automobile as it was prior to the shooting. Several witnesses testified that these bullet holes were in the windshield prior to this incident, and this fact does not appear open to question. None of the witnesses explained what the source of these holes was or whether appellant was responsible for them. We fail to see how this evidence inferentially related to the guilt or innocence of appellant. Pulling out of context and highlighting one question and answer involving the bullet holes surely does not give the weight and importance to this evidence appellant would have us attribute to it, in view of the unquestioned testimony of the witnesses establishing the shooting that killed Spigner. Furthermore, even if this evidence was improperly admitted, in actions tried to the court it is pre-

sumed that the judge disregarded inadmissible testimony and weighed only proper evidence in determining whether the State carried its burden of proving beyond a reasonable doubt that the defendant committed the crime. *Misenheimer v. State*, (1978) Ind., 374 N.E.2d 523, 528; *Fletcher v. State*, (1976) 264 Ind. 132, 134, 340 N.E.2d 771, 773; *Kleinrichert v. State*, (1973) 260 Ind. 537, 542, 297 N.E.2d 822, 826.

Appellant filed a defense of insanity, and one of the court-appointed psychiatrists was Dr. Patrick H. Weeks. After he testified that he examined appellant and was of the opinion that appellant was sane at the time of the commission of this act, Dr. Weeks was asked a hypothetical question. This question set out the facts of the shooting in this case and asked, based on reasonable medical certainty, if the shooting was spontaneous so as to preclude premeditation. The doctor answered that he did not think it did. Counsel for appellant did not object to this question and answer or move to strike. On this basis appellant alleges inadequacy in the lack of action by his counsel. In addition, the second court-appointed psychiatrist, Dr. Peter G. Gutierrez, was asked by appellant's counsel:

Q: "You don't feel that a person can or could react immediately or spontaneously?"

A: "A person could. I do not feel that this one was."

Record at 338. Appellant argues that his counsel should have moved to strike the second sentence of the answer because it was a volunteered statement and not responsive to the question. Dr. Gutierrez also testified that in his opinion appellant was not insane at the time of this crime.

 Like the question involving the bullet holes in the windshield, appellant has taken out of context two questions asked of the expert witnesses, and claims his counsel was inadequate because the questions were not responded to in the manner appellant felt they deserved. The record shows that appellant's trial lawyer had a great deal of experience in the criminal court and was considered a very proficient and capable criminal trial lawyer. He examined and cross-examined the witnesses in a determined and capable manner, including those in question here. We cannot, therefore, say that his actions regarding one question asked of each psychiatrist showed such incompetence and inadequacy, and further so prejudiced appellant, that the proceedings were a mockery of justice shocking to the conscience. Accordingly, we do not find that appellant carried his burden of showing reversible error on the issue. We think there was sufficient evidence from which the trial court could have found that appellant was adequately and competently represented.

Finding no reversible error, we affirm the judgment of the trial court.

All Justices concur.