James A. HOPPER,
Defendant–Appellant,

v.

STATE of Indiana, Plaintiff–Appellee.

No. 55A01–8907–CR–247.

Court of Appeals of Indiana,
First District.

Nov. 14, 1989.
Rehearing Denied Dec. 11, 1989.

William Van Der Pol, Jr., McNutt, Hurt & Blue, Martinsville, for defendant-appellant.

Linley E. Pearson, Atty. Gen., Preston W. Black, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for plaintiff-appellee.

BAKER, Judge.

## STATEMENT OF THE CASE

Defendant-appellant, James A. Hopper (Hopper), appeals the trial court's decision terminating his drug and alcohol treatment program with the department of mental health and resuming jurisdiction to sentence him to five years imprisonment on his conviction for burglary, a Class C felony.[1] We affirm.

## STATEMENT OF THE FACTS

On December 1, 1987, Hopper was charged by Information with two counts of burglary and two counts of theft. On January 13, 1988, Hopper filed a petition requesting treatment in lieu of prosecution. The petition was filed under IND.CODE 16–13–6.1–16 which permits a drug abuser or alcoholic charged with a felony to request treatment under the supervision of the department of mental health instead of prosecution under certain circumstances. Upon order by the trial court, the department of mental health examined Hopper to determine whether he was eligible for the program. Upon advisement by the department of mental health that Hopper was a substance abuser likely to be rehabilitated through treatment, the trial court accepted Hopper into the treatment program and set the cause for a guilty plea hearing. Pursuant to a plea agreement filed on June 24, 1988, Hopper pled guilty to burglary, a Class C felony, in exchange for a five-year prison sentence and dismissal of the remaining counts. Pursuant to the statute, however, the trial court held sentencing in abeyance and ordered him placed under the supervision of the department of mental health.

On July 11, 1988, Hopper was admitted for in-patient treatment at the Madison State Hospital. Hopper violated hospital rules on numerous occasions and was discharged before he completed the addiction unit program. Upon order by the trial court, Hopper was subsequently admitted to the Richmond State Hospital on September 3. He was advised by hospital personnel that he should stay at least 28 days in order for the treatment program to have a positive effect. On September 18, 1988, however, Hopper left the program before treatment was completed against staff advice. Informed of his departure, the trial court issued a warrant for Hopper's arrest and he was taken into custody shortly thereafter.

The trial court subsequently resumed jurisdiction to sentence Hopper on his conviction for burglary. At the sentencing hearing conducted on October 12, 1988, Hopper admitted he left the hospital before completing the treatment program. He claimed, however, that he was released from the facility upon the consent of the department of mental health and that he signed several documents to this effect prior to his departure. Hopper did not possess a copy of the papers he claimed to have signed before leaving the hospital and the trial court granted his request for a continuance to locate such. After an extensive continuance, the trial court proceeded with a further sentencing hearing on April 13, 1989. Following the hearing, the trial court found that Hopper left his treatment program against the advice of his addiction counselor. The trial court concluded that Hopper failed to demonstrate that he successfully completed treatment and sentenced him pursuant to the plea agreement. Hopper subsequently instituted this appeal.

## ISSUES

Hopper raises the following issues for our review:

    I.   Whether the trial court erred in concluding that Hopper failed to suc-

---

1. IND. CODE 35–43–2–1.

cessfully complete the treatment in lieu of prosecution program under IND.CODE 16–13–6.1–16.

II. Whether the trial court erred in permitting the State to present alleged hearsay testimony at the sentencing hearing.

## DISCUSSION AND DECISION

ISSUE I: *Termination of Treatment Program*

Hopper contends the trial court erroneously terminated his treatment program under IND.CODE 16–13–6.1–16. He argues that he is entitled to procedural due process before the trial court may terminate his treatment and resume criminal proceedings. Hopper suggests his due process rights were violated when the trial court determined that he bore the burden of proving that he successfully completed the treatment program.

Whether an individual is entitled to procedural due process depends on whether he is being deprived of a liberty or property interest. *Board of Regents v. Roth* (1972), 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548; *City of Indianapolis v. Tabak* (1982), Ind. App. 441 N.E.2d 494. Thus, we must determine whether an individual placed under drug treatment supervision pursuant to IND.CODE 16–13–6.1–16 has a liberty interest in remaining under treatment such that he is entitled to certain procedural safeguards prior to the termination of that treatment.

■ IND.CODE 16–13–6.1–16 establishes the method and circumstances under which a defendant may request treatment in lieu of prosecution or imprisonment. Additionally, IND.CODE 16–13–6.1–17 discusses the guidelines and procedures to be followed by the trial court when such a request is made and in the event it is granted. Under the statutory scheme, if a defendant elects to submit to treatment and the trial court determines that such is appropriate, the defendant will be placed under the supervision of the department of mental health and have the entry of judgment of conviction against him deferred pending the outcome of his treatment. If a defendant's treatment period is successfully completed, the statutory scheme entitles him to discharge of the criminal proceedings. IND.CODE 16–13–6.1–17(a). Thus, Hopper had an interest, created by the statute, in remaining under supervision until his treatment program was completed and the criminal proceedings were discharged.

Additionally, IND.CODE 16–13–6.1–17(c) provides in pertinent part:

If, before the supervisory period expires, the department determines that further treatment of the individual is not likely to be successful, it shall so advise the court. The court shall thereupon terminate the supervision, and the pending criminal proceeding may be resumed.

Where a state statute creates a right and specifies that that right may be forfeited only upon the misconduct of an individual, that individual has a liberty interest which requires that procedural due process be accorded the individual in the determination whether the misconduct has occurred. *Gagnon v. Scarpelli* (1973), 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656; *Morrissey v. Brewer* (1972), 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484. The purpose of due process is to protect the individual from the arbitrary action of government. *Meachum v. Fano* (1976), 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451.

Although the statute does not specify that the treatment program may be terminated only upon the misconduct of the individual undergoing treatment, it does require a determination by the department of mental health that the individual cannot be further treated. Such determination must be based on events occurring during the course of treatment, and thus rests exclusively within the discretion of the department of mental health. Clearly, however, that discretion may be subject to arbitrary exercise or abuse. Because a defendant may suffer the loss of his liberty by having judgment entered and by being subsequently sentenced upon termination of treatment under the statutory scheme, the placing of the absolute control of that de-

termination in the discretion of the department of mental health requires certain minimal due process protection. Thus, we hold that an individual placed under drug treatment supervision has a protected liberty interest such that he or she must be accorded procedural due process before the court may terminate the treatment and resume criminal proceedings.

■■■ Having determined that Hopper was entitled to due process prior to the termination of his treatment program, we must next determine what procedures are required to provide due process. We agree with Hopper's suggestion that his status under treatment is akin to a defendant's situation on probation or parole. In *Morrissey, supra,* the United States Supreme Court prescribed the minimum requirements to be met in parole revocation proceedings. Specifically, the Supreme Court stated that the minimal standards for due process require the opportunity for a hearing before the trial court determines whether the defendant has violated a condition of parole. Additionally, the Supreme Court stated that a defendant shall be afforded written notice of claimed parole violations, disclosure of evidence, the opportunity to be heard, the right to confront and cross-examine witnesses, a neutral and detached hearing body, and a written statement describing the evidence relied upon for the action taken. Likewise, the Supreme Court has held these procedural safeguards apply to probation revocation proceedings as well. *Gagnon, supra.* The purpose of these procedures is to insure that the determination by the department of mental health that a defendant cannot be further treated is not arbitrary but rests upon some reasonable basis. *See Meachum, supra.* Although the Supreme Court did not declare that the government must prove its allegations, it cannot be seriously disputed that as the party attempting to terminate Hopper's treatment, the State bore the burden of proof thereon. This requirement is explicitly recognized in our statutes establishing the procedures

for parole and probation revocation proceedings. *See* IND.CODE 35–38–2–3(d); IND.CODE 11–13–3–10.[2]

■■■ It is apparent from the record that Hopper was accorded the procedural safeguards set out above. A hearing was held to determine whether the department of mental health's decision to terminate Hopper's treatment was appropriate. In fact, the trial court postponed the first hearing and granted Hopper an extensive continuance in order to locate documents which he claimed to have signed to show that the department's determination was inappropriate. At each hearing, Hopper was given an opportunity to be heard and to present evidence, disclosure of the evidence against him, and the opportunity to confront and cross-examine adverse witnesses. Further, the State had met its burden of proving that Hopper did not successfully complete the treatment program. Ray O'Donnell, Hopper's addiction counselor, testified that Hopper voluntarily terminated his participation in the treatment program at Richmond State Hospital against his advice. In fact, by his own admission, Hopper left the program because he had had enough and had learned all that he could learn. This was sufficient evidence from which a reasonable person could draw the inference that Hopper failed to successfully complete the treatment program.

## ISSUE II: *Hearsay*

Hopper also alleges the trial court improperly permitted the State to present certain alleged hearsay testimony at the sentencing hearing. During its case in chief, the State attempted to elicit testimony from O'Donnell regarding the events that occurred during the group session on the morning Hopper left the treatment program. Hopper objected on the basis that such testimony constituted hearsay and was inadmissible. Following a series of objections on this basis, the trial court admitted the following testimony:

**2.** We note further that these statutes require the State to prove its allegations by a preponderance of the evidence. This standard of proof is similarly applicable in proceedings to terminate drug or alcohol treatment.

Q: Mr. O'Donnell, what happened during that group session that you were conducting on the morning of September 18, 1989?

A: Several of the other clients confronted Mr. Hopper as to the reason that he was not present during the entire AA meeting that evening. I also asked Mr. Hopper the reason for that behavior. He stated something about he had seen some friends on the street and, and needed to talk to them and that was the reason that he was not in attendance for the meeting.

*Record* at 183.

Hearsay is defined as written evidence or testimony in court of a statement made out of court, such statement being offered as an assertion to show the truth of the matter asserted therein, and thus resting for its value upon the credibility of the out of court asserter. *Wells v. State* (1970), 254 Ind. 608, 261 N.E.2d 865; *Plan-Tec, Inc. v. Wiggins* (1983), Ind.App., 443 N.E.2d 1212. We disagree that O'Donnell's testimony fell within this definition. O'Donnell did not relate what the other patients in fact said. Rather, he merely testified as to the confrontation that occurred during the meeting on September 18th. Thus, there was no out-of-court statement admitted into evidence through O'Donnell. To the extent such testimony could be considered hearsay, in actions tried to the court it is presumed the judge disregarded inadmissible evidence and weighed only competent evidence in reaching judgment. *Pinkston v. State* (1982), Ind., 436 N.E.2d 306; *Ottman v. State* (1979), 272 Ind. 262, 397 N.E.2d 273; *Johnson v. State* (1978), 177 Ind.App. 501, 380 N.E.2d 566. Further, any error in admitting the testimony is rendered harmless given the overwhelming amount of evidence against Hopper, including his admission. *Altmeyer v. State* (1988), Ind., 519 N.E.2d 138.

Judgment affirmed.

1. In this respect, I note that the hospital was unable or unwilling to document the circumstances surrounding the September 18 departure of Hopper from the hospital.

ROBERTSON, J., concurs.

SULLIVAN, J., dissents with opinion.

SULLIVAN, Judge, dissenting.

It is apparent from the record that the sentencing court assessed the evidence under an erroneous standard, i.e., that the defendant bore the burden of proving by a preponderance of the evidence that he had successfully completed the substance abuse program. We do not and cannot know what decision the trial court might have made had it applied the correct standard, as enunciated by the majority here.[1]

In my view, we do not have the prerogative to review the evidence and determine that the State carried the burden of establishing that Hopper left the program prematurely and without authorization from the hospital authority.

I would reverse and remand for reconsideration of the evidence in light of the applicable standard concerning the burden of proof.