983 P.2d 189

STATE of Hawai'i, Plaintiff–Appellee,

v.

James Lincoln VLIET, Defendant–Appellant.

No. 22000.

Supreme Court of Hawai'i.

Sept. 8, 1999.

Jon N. Ikenaga, Deputy Public Defender, on the briefs, for defendant-appellant.

Caroline M. Mee, Deputy Prosecuting Attorney, on the briefs, for plaintiff-appellee.

MOON, C.J., KLEIN, LEVINSON, NAKAYAMA, and RAMIL, JJ.

Opinion of the Court by MOON, C.J.

On September 29, 1998, following a nonjury trial in the district court of the first circuit, defendant-appellant James Lincoln Vliet was found guilty of: (1) one count of Driving Under the Influence of Intoxicating Liquor (DUI), in violation of Hawai'i Revised Statutes (HRS) § 291–4(a)(1) (1993 & Supp. 1998); and (2) one count of Vehicle Entering Stop or Yield Intersection, in violation of HRS § 291C–63(b) (1993). On appeal, Vliet argues that his DUI conviction should be reversed because: (1) his constitutional rights to present a defense and to the assistance of counsel were violated inasmuch as the district court refused to allow him to present argument on the motion for judgment of acquittal; (2) there was insufficient evidence to support his conviction; and (3) the district court abused its discretion by allowing the arresting officer to testify to a legal conclusion. Inasmuch as each of Vliet's contentions lacks merit, we affirm his conviction and sentence.

## I.  BACKGROUND

The following facts were adduced from the testimony of the only two witnesses at trial: the arresting officer for the prosecution and Vliet, testifying in his own behalf.

On May 18, 1998, at approximately 3:00 a.m., Honolulu Police Department (HPD) Officer Malcolm Uehara (Officer Uehara), while on duty, observed Vliet's vehicle heading south on Māhukona Street near Ala Moana Shopping Center. According to Officer Uehara, who was driving west on Kona Street in his subsidized vehicle, Vliet's vehicle approached the intersection at Kona and Māhukona Streets and, without stopping at the stop sign, made a right turn. Officer Uehara activated his lights and siren and pulled Vliet over to the right side of Kona Street.

Officer Uehara approached Vliet's vehicle and asked Vliet "for his paperwork and his driver's license." The only occupants of the vehicle were Vliet, who was in the driver's seat, and an unidentified male in the passenger seat. While conversing with Vliet, Officer Uehara "could smell alcohol, a slight odor of [an] alcoholic-type beverage coming from his breath." Officer Uehara also observed that Vliet's eyes were "red and glassy[, and h]e also had a stare, kine'a like a blank stare on his face."

Officer Uehara testified that Vliet was "quickly able to produce [his] registration and ... insurance." Vliet indicated, however, that he did not have a license, prompting Officer Uehara to request an identification (ID) card. Thereafter, Vliet produced a card bearing a "picture of Christ." After Officer Uehara remarked to Vliet that this was not his ID card, Vliet resumed looking through his wallet. At some point, Officer Uehara pointed out Vliet's state ID card for him, after which Vliet "produced it."

Based on his observations, Officer Uehara requested Vliet to perform a field sobriety

test (FST). Vliet agreed. Upon exiting his vehicle, Vliet left the door open, blocking traffic, and Officer Uehara had to ask Vliet to close it. Officer Uehara observed that, "while walking away [from the vehicle], [Vliet] kineʻa took slow deliberate steps like[ ] . . . he was really concentrating in [sic] walking."

Officer Uehara testified that he had been a police officer for ten years, had made about 300 DUI arrests, and had received about a week of training in administering FSTs. Prior to administering the FST, Officer Uehara asked Vliet standard questions about his medical history, at which time Vliet disclosed that he was an epileptic and had taken medication for his condition earlier that day. Officer Uehara then proceeded to administer the FST, which consists of three phases—the horizontal gaze nystagmus, the "walk-and-turn," and the "one-leg raise."

Vliet failed all three phases of the FST. With respect to the horizontal gaze nystagmus phase, Officer Uehara stated that, during the test, he observed that Vliet "was swaying back and forth." Additionally, "[Vliet's] eyes would twitch while tracking, while going back and forth, and then on the 45–degree angle, his eyes had that twitching again." Officer Uehara evaluated Vliet's performance as poor.

As for the "walk-and-turn" phase, Officer Uehara stated that he first explained the test to Vliet and then demonstrated it to him. After asking Officer Uehara a few questions, Vliet indicated that he understood the directions. In the middle of the test, however, Vliet indicated that he had a question, at which point Officer Uehara explained that he could not answer questions while Vliet was taking the test. Vliet started the test over again and according to Officer Uehara, performed poorly. Officer Uehara explained that "[Vliet] swayed in the middle, kineʻa lost his balance, and he took ten steps on the return[,]" even though he was instructed to take nine steps.

With respect to the "one-leg raise" phase, Officer Uehara testified that, after explaining, but prior to demonstrating, the test to Vliet, he instructed Vliet not to begin the test until told to do so. Despite this instruction,

Vliet started "doing the test" during Officer Uehara's demonstration. As for the test itself, Officer Uehara stated that Vliet again performed poorly. Specifically, although Vliet was instructed to keep his arms to his side, Vliet had his arms one to two feet away from his body and "used mostly his left hand as balance." Vliet also "sway[ed] . . . in trying to keep his balance."

After Vliet failed to perform adequately on the FST, Officer Uehara arrested him for DUI. Officer Uehara testified that, upon being arrested, Vliet became uncooperative: "He made his body stiff, he wouldn't move to my directions, he was yelling, saying stuff[ ] . . . to the effect that you don't know what you're doing, I did the test well." Over the objection of defense counsel, Officer Uehara was permitted to state his opinion regarding Vliet's state of sobriety on the night in question and whether he believed that Vliet was able to operate his vehicle safely that night.

At the close of Officer Uehara's testimony, the prosecution rested, prompting the following pertinent exchange:

[Prosecutor]: Thank you, your Honor, the State rest[s].

THE COURT: Motion for judgment of acquittal is denied.

[Defense counsel]: May I make argument?

THE COURT: Not really. The argument wouldn't have any probative value, and I just heard all of the evidence. It's only been an hour and fifteen minutes of testimony, so taking the evidence in the light most favorable to the State, motion is denied.

We note that, prior to Vliet's testimony, defense counsel introduced into evidence, by stipulation, a letter from Queen's Medical Center confirming that Vliet had a prescription for Gabapentin, also known as Neurontin, an anticonvulsant drug used to treat epilepsy. The letter further explained that:

Nervous system effects are the most frequently reported side effects. Somnolence is the most frequently reported adverse effect of gabapentin, occurring in about 19% of patients; the incidence and severity of somnolence appears to be dose related.

Dizziness or ataxia has been reported in about 17% or 13%, respectively; the incidence of ataxia also appears to be dose related. Fatigue reportedly occurs in 11% of patients, nystagmus in about 8%, tremor in about 7%, nervousness in 2.4%, dysarthria in 2.4%, amnesia in 2.2%, depression in 1.8%, abnormal thinking in 1.7%, twitching in 1.3%, and abnormal coordination in 1.1% of patients receiving gabapentin as adjunctive therapy.

. . . .

Vliet's version of the events on the night in question differed in significant respects from that of Officer Uehara. According to Vliet, on the night in question, he was giving someone whom he had just met a ride to the 7–Eleven Store at the corner of Kapiʻolani Boulevard and Atkinson Drive. While driving eastbound on Kapiolani Boulevard, he noticed a police officer pull in behind him from Keeaumoku Street. Vliet testified that, "I was approaching the stop sign and the officer started coming up behind me. I put on my blinker and I made a right turn [onto Māhukona Street]. At that moment, the police officer[']s sirens started flashing." Claiming that "[t]here was no place I could safely pull on the side[,]" Vliet stated that he proceeded through the next stop sign and "stopped when I came to a clear space."

Vliet claimed that Officer Uehara smelled the odor of alcohol because his passenger was drunk. Vliet indicated that he had picked up his passenger in the Hickam area and that he thought that his passenger, who offered him $5.00 for a ride to town, had just come out of a bar at the time they met. Vliet admitted, however, that he had consumed two beers earlier in the evening, one at about 5:00 p.m. and another at about 9:30 p.m.

Vliet testified that he had taken his Neurontin at about 11:00 p.m. According to Vliet, the Neurontin generally "makes me like sleepy, really fatigue, sometimes I see double vision. It gives me like muscle spasms in my arms and sometimes in my eyes, twitching in my eyes." Vliet claimed that the Neurontin also "throws off the coordination." Vliet stated that he was "kinda deaf in the left ear" and that Officer Uehara "was kinda

mumbling and stuff" which is why he had trouble understanding what Officer Uehara had said and started the one-leg raise test before being instructed to do so.

After hearing closing arguments, the district court ruled as follows:

THE COURT: The Court is ready to rule. Mr. Vliet[,] I find that the State has proven beyond a reasonable doubt that you had consumed and were under the influence of intoxicating liquor in amount [sic] to impair your normal mental faculties or to care for yourself and guard against casualty.

Obviously, there was an effect between certain amount [sic] of alcohol and the gabapentin. To be honest with you, your testimony was not credible. I believe you consumed more than two beers. I'm not in a position to be more specific than to say that and it was, however, a combination of the alcohol and the gabapentin rather than the alcohol alone. But having said that, that does not in any sense take away from the ultimate conclusion that the alcohol was at least a partial cause of the ultimate condition[,] and I believe therefore that it constitutes being under the influence of intoxicating liquor in an amount sufficient to impair normal mental faculties or to care for yourself and guard against casualty. And I find you guilty of the charged offense.

I further find you guilty of the related offense [of vehicle entering stop or yield intersection for disregarding the stop sign].

The district court suspended Vliet's license for ninety days concurrent with a one-year administrative suspension due to his refusal to submit to an "intoxilyzer" breath test. Vliet was also ordered to perform thirty hours of community service in lieu of a $150.00 fine, attend a fourteen-hour education and counseling program, and pay $107.00 for alcohol assessment and treatment. Except for the suspension of Vliet's license, the district court indicated that it would stay the remainder of Vliet's sentence pending this appeal, which timely followed.

## II.  DISCUSSION

### A.  Motion for Judgment of Acquittal

When reviewing a post-verdict motion for judgment of acquittal,

> we employ the same standard that a trial court applies to such a motion, namely, whether, upon the evidence viewed in the light most favorable to the prosecution and in full recognition of the province of the trier of fact, the evidence is sufficient to support a prima facie case so that a reasonable mind might fairly conclude guilt beyond a reasonable doubt.  Sufficient evidence to support a prima facie case requires substantial evidence as to every material element of the offense charged.  Substantial evidence as to every material element of the offense charged is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion.  Under such a review, we give full play to the right of the fact finder to determine credibility, weigh the evidence, and draw justifiable inferences of fact.

State v. Jhun, 83 Hawai'i 472, 481, 927 P.2d 1355, 1364 (1996) (citations and internal quotation marks omitted).[1]

In order to convict Vliet of DUI, as prohibited by HRS § 291-4(a)(1), the prosecution was required to prove beyond a reasonable doubt that (1) Vliet (2) operated or assumed actual physical control of the operation of any vehicle while (3) under the influence of intoxicating liquor in an amount sufficient to impair his normal mental faculties or ability to care for himself and guard against casualty.

Claiming that there is insufficient evidence to establish (3), Vliet argues:

> According to Officer Uehara's testimony, the first indicator he utilized was Mr. Vliet's physical appearance—red, glassy eyes and a "blank stare" and an odor of alcoholic beverage.  However, Mr. Vliet's physical appearance could not provide substantial evidence for several reasons.
>
> First, Mr. Vliet admitted that he had consumed two beers which could have accounted for the odor of an alcoholic beverage.  Officer Uehara admitted that he could not tell how much alcohol Mr. Vliet had consumed simply because of an odor.
>
> Second, Officer Uehara had never seen Mr. Vliet prior to the night in question and could not say whether Mr. Vliet's eyes were always red and glassy.  Officer Uehara also failed to inquire whether there were other reasons why Mr. Vliet's eyes could have been red.  According to the letter from [Queen's Medical Center], somnolence and fatigue are common side-effects of Neurontin.  Thus, Mr. Vliet's eyes could have been red because of a lack of sleep....
>
> Another factor mentioned by Officer Uehara was Mr. Vliet's difficulty in producing his I.D. and that he first produced a picture of Christ instead of his I.D. However, Mr. Vliet explained that he kept his I.D. in the same section as the picture of Christ....

Vliet also contends that the results of the FST "could not have provided substantial evidence to support the trial court's decision[,]" speculating that "[his] epilepsy and epileptic medication, Neurontin, could have

---

1.  As previously indicated, Vliet attacks the district court's refusal to hear oral argument on his motion for judgment of acquittal, and, in a separate argument, contends that there is insufficient evidence to support his conviction.  Insofar as this court reviews a sufficiency of evidence claim under essentially the same standard as a denial of a motion for judgment of acquittal, compare Jhun, 83 Hawai'i at 481, 927 P.2d at 1364, with State v. Jackson, 81 Hawai'i 39, 46, 912 P.2d 71, 78 (1996) (Where the defendant challenges the sufficiency of the evidence supporting his or her conviction, "[t]he test on appeal is not whether guilt is established beyond a reasonable doubt, but whether there was substantial evidence to support the conclusion of the trier of fact....

'Substantial evidence' as to every material element of the offense charged is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion.  And as trier of fact, the trial judge is free to make all reasonable and rational inferences under the facts in evidence, including circumstantial evidence." (Citations and internal brackets omitted.)  When an appellate court passes on the legal sufficiency of such evidence, it is well established that the evidence adduced at trial must be considered in the strongest light for the prosecution.), Vliet's claim with respect to the sufficiency of the evidence will be treated herein.

influenced the results of the test."[2] Pointing out that the prosecution "was required to prove that [he] was driving under the influence of *intoxicating liquor*" (emphasis in original), Vliet insists that the prosecution failed to adduce "any evidence that [his] condition was due to alcohol, [and] not his epilepsy or his Neurontin."

■ Vliet's assertions clearly lack merit. In attempting to explain away the evidence adduced by the prosecution, Vliet appears to forget that this court, in passing upon the sufficiency of the evidence, must view the evidence in the light most favorable to the prosecution and in full recognition of the province of the trier of fact. *See Jhun*, 83 Hawai'i at 481, 927 P.2d at 1364. Additionally, it is well settled that this court "will not pass upon issues dependent upon the credibility of witnesses and the weight of the evidence[.]" *State v. Buch*, 83 Hawai'i 308, 321, 926 P.2d 599, 612 (1996). In any event, we are convinced that there was substantial, probative evidence, if not overwhelming evidence, to enable a person of reasonable caution to conclude that Vliet was DUI.

■ As previously indicated, according to Officer Uehara's testimony, Vliet approached the intersection at Kona and Māhukona Streets and, without stopping at the stop sign, made a right turn. Officer Uehara observed that the smell of alcohol emanated from Vliet's breath and that Vliet's eyes were red and glassy. Vliet had difficulty producing his ID, initially showing Officer Uehara a picture of Christ. Indeed, Vliet was unable to locate his ID until Officer Uehara pointed it out to him. Upon exiting his vehicle, Vliet left the door open, blocking traffic. Vliet also "took slow deliberate steps like[ ] . . . he was really concentrating in [sic] walking." Finally, Vliet had balance and coordination problems during every phase of the FST, even failing, at times, to follow Officer Uehara's instructions. Certainly this evidence, particularly when viewed in the strongest light for the prosecution, is more than sufficient to enable a reasonable fact-finder to conclude that Vliet was DUI on the night in question.

■ As for Vliet's claim that the prosecution failed to adduce "any evidence that [his] condition was due to alcohol, [and] not his epilepsy or his Neurontin," this contention is patently meritless insofar as Vliet himself admitted at trial that he had consumed two beers on the night in question. It appears, however, that Vliet is attempting to argue a more complex proposition, namely, that, in order be convicted of DUI under HRS § 291–4(a)(1), the prosecution was required to prove that his condition on the night in question was caused exclusively by intoxicating liquor (and not by a combination of his Neurontin and alcohol). This position is untenable.

■ As previously indicated, HRS § 291–4(a)(1) plainly and simply provides that a person commits DUI if "[t]he person operates or assumes actual physical control of the operation of any vehicle <u>while under the influence of intoxicating liquor</u> . . . <u>**in an amount sufficient to impair**</u> the person's normal mental faculties or ability to care for oneself and guard against casualty[.]" (Underscoring and bold emphases added.) Nothing in the statute requires that alcohol be the sole or exclusive cause of a defendant's impairment. Rather, what is required is proof beyond a reasonable doubt that liquor contributed to the diminishment of the defendant's capacity to drive safely.

In affirming the DUI conviction of a defendant who had consumed alcohol and ingested PCP, the Massachusetts Supreme Judicial Court in *Commonwealth v. Stathopoulos*, 401 Mass. 453, 517 N.E.2d 450 (1988), stated:

> A defendant may be found guilty of driving while under the influence of intoxicating liquor if the defendant's ability to operate a vehicle safely is diminished, and *alcohol is one contributing cause of the diminished ability. It is not necessary that alcohol be the sole or exclusive cause.* It is

**2.** As previously indicated, Vliet's theory of the case was that his condition on the night in question was due to Neurontin and not alcohol. At no time, however, did Vliet ever assert that his condition on the night in question was due to his epilepsy. In fact, apart from indicating that he suffered from epilepsy and was taking Neurontin to treat it, Vliet did not present any evidence relating to his epilepsy or the effects thereof on his balance or coordination.

enough if the defendant's capacity to operate a motor vehicle is diminished because of alcohol, even though other, concurrent causes contribute to that diminished capacity.

517 N.E.2d at 453 (emphasis added) (citation omitted). Simply put, where a defendant's intoxication is due in any part to alcohol, it is immaterial that the defendant might also have been affected by other drugs. *See, e.g., State v. Thomas,* 79 Idaho 372, 318 P.2d 592, 594–95 (1957) (holding the same and affirming the DUI conviction of a defendant who consumed alcohol and ingested "pain killers" containing codeine); *State v. Nix,* 535 So.2d 866, 869 (La.Ct.App.1988) (holding the same and affirming the DUI conviction of a defendant who consumed alcohol and ingested Xanax tablets, a tranquilizer); *State v. West,* 416 A.2d 5, 9 (Me.1980) (holding the same and affirming the DUI conviction of a defendant who consumed alcohol and ingested Thorazine); *State v. Daniels,* 379 N.W.2d 97, 99 (Minn.Ct.App.1986) (holding the same and affirming the DUI conviction of a defendant who consumed alcohol and ingested Evacil, an antidepressant); *State v. Miles,* 8 Or.App. 189, 492 P.2d 497, 501 (1972) (holding the same and affirming the DUI conviction of a defendant who consumed alcohol and ingested pills for a "stomach ailment"); *Heard v. State,* 665 S.W.2d 488, 489–90 (Tex.Crim. App.1984) (holding the same and affirming the DUI conviction of a defendant who had consumed alcohol and ingested several medications, including Valium).

■ Finally, in our view, the interpretation advanced by Vliet would effectively render the statute absurd: a person would be permitted to drive while under the influence of intoxicating liquor with impunity so long as he or she had consumed or ingested any additional substance that might have affected his or her driving. It is a well established principle that "[t]he legislature is presumed not to intend an absurd result, and legislation will be construed to avoid, if possible, inconsistency, contradiction[,] and illogicality."

---

3. The sixth amendment to the United States Constitution and article I, section 14 of the Hawai'i Constitution guarantee an accused the right to the assistance of counsel in his or her defense, *see, e.g., State v. Luton,* 83 Hawai'i 443, 448, 927

*State v. Arceo,* 84 Hawai'i 1, 19, 928 P.2d 843, 861 (1996) (citation and internal quotation marks omitted) (brackets in original). Based upon the foregoing, we reject Vliet's assertions with respect to the sufficiency of the evidence.

■ As previously indicated, Vliet raises an additional claim with respect to the denial of his motion for judgment of acquittal. Specifically, Vliet, relying on *Herring v. New York,* 422 U.S. 853, 95 S.Ct. 2550, 45 L.Ed.2d 593 (1975), claims that he was deprived of his constitutional rights to present a defense and to the assistance of counsel [3] when the district court refused to allow him to present argument on the motion for judgment of acquittal. We disagree.

In *Herring,* the Supreme Court recognized the importance of *the closing argument* to a criminal defendant, holding that a New York law that allowed judges in a non-jury criminal trial to deny counsel any opportunity to make a closing argument deprived the accused of his constitutional right to the assistance of counsel. *Id.* at 865, 95 S.Ct. 2550. The *Herring* Court stated in pertinent part that:

There can be no doubt that closing argument for the defense is a basic element of the adversary factfinding process in a criminal trial. Accordingly, it has universally been held that counsel for the defense has a right to make a closing summation to the jury, no matter how strong the case for the prosecution may appear to the presiding judge. The issue has been considered less often in the context of a so-called bench trial. But the overwhelming weight of authority, in both federal and state courts, holds that a total denial of the opportunity for final argument in a nonjury criminal trial is a denial of the basic right of the accused to make his defense.

. . . .

It can hardly be questioned that closing argument serves to sharpen and clarify the

P.2d 844, 849 (1996), as well as the right to present a defense, *see, e.g., State v. Nizam,* 7 Haw.App. 402, 411, 771 P.2d 899, 905, *cert. denied,* 70 Haw. 666, 796 P.2d 502 (1989).

issues for resolution by the trier of fact in a criminal case. For it is only after all the evidence is in that counsel for the parties are in a position to present their respective versions of the case as a whole. Only then can they argue the inferences to be drawn from all the testimony, and point out the weaknesses of their adversaries' positions. And for the defense, closing argument is the last clear chance to persuade the trier of fact that there may be reasonable doubt of the defendant's guilt.

The very premise of our adversary system of criminal justice is that partisan advocacy on both sides of a case will best promote the ultimate objective that the guilty be convicted and the innocent go free. In a criminal trial, which is in the end basically a factfinding process, no aspect of such advocacy could be more important than the opportunity finally to marshal the evidence for each side before submission of the case to judgment.

This is not to say that closing arguments in a criminal case must be uncontrolled or even unrestrained. The presiding judge must be and is given great latitude in controlling the duration and limiting the scope of closing summations. . . .

But there can be no justification for a statute that empowers a trial judge to deny absolutely the opportunity for any closing summation at all. The only conceivable interest served by such a statute is expediency. Yet the difference in any case between total denial of final argument and a concise but persuasive summation could spell the difference, for the defendant, between liberty and unjust imprisonment.

422 U.S. at 858–63, 95 S.Ct. 2550 (footnotes and citations omitted).

Vliet, without citation to any authority, proposes that "[t]he right to make a motion for judgment of acquittal and present argument thereo[n] is analogous to the right to present a closing argument." Vliet reasons simply that "both motions for judgment of acquittal and closing arguments give the accused an opportunity to present his interpretation of the evidence, raise any possible defenses and highlight procedural and factual deficiencies in the State's case." Based on the reasoning set forth in *Herring,* Vliet urges that the district court, by refusing to allow him to present argument on the motion for judgment of acquittal, deprived him of his constitutional rights to present a defense and to the assistance of counsel.

Notwithstanding Vliet's attempt to analogize the right to make a closing argument to the right to present oral argument on a motion for judgment of acquittal, we nevertheless remain convinced that *Herring* is inapposite to the present case. As previously indicated, *Herring* deals strictly with the right of the defense to make a closing argument and says nothing regarding the right to present argument on a motion for judgment of acquittal. Indeed, the Court in *Herring* specifically noted: "We deal in this case only with final argument or summation at the conclusion of the evidence in a criminal trial. *Nothing said in this opinion is to be understood as implying the existence of a constitutional right to oral argument at any other stage of the trial* or appellate process." 422 U.S. at 863 n. 13, 95 S.Ct. 2550 (emphasis added). As such, several of our sister jurisdictions have refused to extend the holding of *Herring* to other stages of trial. *See, e.g., People v. Withers,* 87 Ill.2d 224, 57 Ill.Dec. 736, 429 N.E.2d 853 (1981) (no constitutional right to argue a motion for a directed verdict); *Holland v. State,* 77 Md.App. 252, 549 A.2d 1178 (Spec.App.1988) (no constitutional right to present oral argument on motion to suppress), *cert. denied,* 314 Md. 628, 552 A.2d 894 (1989); *United States v. Salovitz,* 701 F.2d 17 (2d Cir.1983) (criminal defendant has no constitutional right to have an attorney make an opening statement); *Ogle v. Estelle,* 641 F.2d 1122 (5th Cir.1981) (no constitutional right to present oral argument on appeal).

Moreover, it cannot be disputed that the function of the closing argument differs significantly from that in support of a motion for judgment of acquittal. Whereas the closing argument "serves to sharpen and clarify the issues for resolution by the trier of fact in a criminal case," *Herring,* 422 U.S. at 862, 95 S.Ct. 2550, and offers the defense "the last clear chance to persuade the trier of fact that there may be reasonable doubt of the defen-

dant's guilt," *id.*, a "motion for a judgment of acquittal *tests the sufficiency of the evidence* [,]" *State v. Alston*, 75 Haw. 517, 527, 865 P.2d 157, 163 (1994) (emphasis added) (citing Hawai'i Rules of Penal Procedure (HRPP) Rule 29(a) (1995);[4] 2 C. Wright, *Federal Practice and Procedure* § 461, at 637–38 (2d ed.1982)), and "avoids the risk that a jury may capriciously find him guilty though there is no legally sufficient evidence of his guilt." 2 C. Wright, *Federal Practice and Procedure* § 461, at 638. In light of these distinct objectives, we would be remiss if we were to draw an analogy in this case between the right to make a closing argument and the right to present argument on a motion for judgment of acquittal, particularly in the absence of any supporting authority. We therefore hold that Vliet's reliance upon *Herring* is misplaced.

■ The question still remains, however, whether Vliet's constitutional rights to present a defense and to the assistance of counsel were violated by the district court's refusal to hear oral argument on his motion for judgment of acquittal. We answer in the negative. Although there is no question that a defendant has the right to move for a judgment of acquittal, *see* HRPP Rule 29(a), "[t]he right to argue the motion is perhaps less clear and admittedly is not of constitutional dimension." *People v. Withers*, 89 Ill. App.3d 116, 44 Ill.Dec. 394, 411 N.E.2d 516, 517 (1980), *overruled on other grounds*, 87 Ill.2d 224, 57 Ill.Dec. 736, 429 N.E.2d 853 (1981). In other words, there is no constitutional right to argue a motion for judgment of acquittal. *See id.* This is not to say that the district court's refusal to consider oral argument on Vliet's motion is beyond reproach. Vliet insists that, "[i]n his motion for judgment of acquittal[,][he] could have challenged the sufficiency of the evidence presented by the State based on his recollection and interpretation of the evidence presented and presented his theory of the defense to the judge." Vliet further asserts that he "could have also brought procedural

and factual deficiencies in the State's case to the court's attention."

■ We note at the outset that Vliet fails to identify in his briefs the "procedural and factual deficiencies in the State's case" to which he is referring. Regardless, on a motion for judgment of acquittal, the court, as stated previously, determines whether the evidence, *viewed in the light most favorable to the prosecution* and in full recognition of the province of the trier of fact, is sufficient to support a prima facie case so that a reasonable mind might fairly conclude guilt beyond a reasonable doubt. *Jhun*, 83 Hawai'i at 481, 927 P.2d at 1364. Thus, notwithstanding any inconsistencies in the prosecution's case, the district court, in ruling on the motion for judgment of acquittal in this case, was required to view the evidence in the light most favorable to the prosecution. The record evinces, and Vliet does not contest, that the district court applied the correct standard. Furthermore, as indicated *supra*, the evidence adduced by the prosecution was more than sufficient to support a prima facie case such that a reasonable mind might fairly conclude guilt beyond a reasonable doubt. Based on the record before this court, we hold that, insofar as Vliet's substantial rights were not affected by the district court's refusal to hear argument, the nonconstitutional error, if any, was harmless beyond a reasonable doubt. *See* HRPP Rule 52(a) (1996) ("Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded.").

B. *The Opinion Testimony of Officer Uehara*

Pursuant to Hawai'i Rules of Evidence (HRE) Rule 704 (1993), "[t]estimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." However, it is well settled that "questions which would merely allow the witness to tell the [fact-finder] what result to reach are not permitted. Nor is the rule

---

4. HRPP Rule 29(a) states in pertinent part:
   **Motion Before Submission to Jury**.... The court on motion of a defendant or of its own motion shall order the entry of judgment of acquittal of one or more offenses alleged in the charge after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses....

intended to allow a witness to give legal conclusions." *State v. Pinero,* 70 Haw. 509, 520–21, 778 P.2d 704, 712 (1989) (citation and emphasis omitted).

As previously indicated, Officer Uehara was permitted, over the objection of defense counsel, to testify regarding Vliet's state of sobriety on the night in question and whether he believed that Vliet was able to safely operate his vehicle that night. The pertinent colloquy reads:

> [Prosecutor]: Based upon your observations of the defendant and based upon your training and experience as a Honolulu Police Officer, *do you have an opinion as to the defendant's state of sobriety* on May 18th, 1998?
>
> [Defense counsel]: We would object, your Honor, at this time expert testimony—we would object to the officer to either provide lay opinion or expert opinion in this case.
>
> THE COURT: I'll overrule. I think if he's done three hundred field sobriety test results, he's entitled to at least a lay opinion. I will allow that.
>
> [Prosecutor]: Okay. *Do you have an opinion?*
>
> [Officer Uehara]: *Yeah, he did poorly, he would be driving poorly too.*
>
> Q. *And so, do you have an opinion as to his state of sobriety?*
>
> A. *That would have been over the legal limit.*
>
> Q. *In your opinion, again, was the defendant able to safely operate his vehicle* on May 18th, 1998?
>
> [Defense Counsel]: And we'd object again, your Honor. He's making an assumption.
>
> THE COURT: I'll allow lay opinion.
>
> [Prosecutor]: I'll repeat the question. In your opinion, sir, was the defendant able to safely operate his vehicle on May 18th, 1998?
>
> [Officer Uehara]: *I don't believe so.*

(Emphases added.)

Attacking Officer Uehara's testimony, Vliet submits that:

In the instant case, the State was required to prove that: (1) Mr. Vliet operated his vehicle; and (2) that Vliet did so while under the influence of intoxicating liquor, meaning that he was under the influence of intoxicating liquor in an amount sufficient to impair his normal mental faculties or ability to care for himself and guard against casualty. As Mr. Vliet did not contest that he was operating the vehicle, the sole legal issue was whether he was under the influence of intoxicating liquor at the time.

Officer Uehara's testimony that Mr. Vliet was under the influence, including his opinion that Mr. Vliet's "state of sobriety" was over the legal limit and that Mr. Vliet was unable to safely operate his vehicle[,] specifically addressed the legal issue involved and was erroneous for several reasons.

First, ... performance on the field sobriety test does not provide sufficient basis for testimony as to the BAC of the subject. Yet, Officer Uehara testified that Mr. Vliet's "state of sobriety" was over the legal limit, based on his performance on the field sobriety tests. As such, this evidence should have been excluded pursuant to HRE Rule 403 as prejudicial and lacking in trustworthiness.

Second, Officer Uehara's testimony improperly embraced the ultimate legal issue in the case, whether Mr. Vliet was under the influence of intoxicating liquor in an amount sufficient to impair his normal mental faculties or ability to care for himself and guard against casualty. Under either lay or expert opinion, Officer Uehara should have been limited to testifying as to the articulable facts which he had observed, such as Mr. Vliet's performance on the field sobriety test and the other alleged indicators of intoxication such as the smell of alcoholic beverage on Mr. Vliet's breath and his red eyes. Instead, Officer Uehara testified both that Mr. Vliet was intoxicated and that he was unable to drive safely based on his state of intoxication.

(Citations omitted.) Vliet also claims that the error was not harmless, inasmuch as

"there was insufficient, objective evidence to find Mr. Vliet guilty of DUI." We disagree.

This court has acknowledged that "[t]he task of separating impermissible questions which call for overbroad or legal responses from permissible questions is not a facile one." *Pinero*, 70 Haw. at 520, 778 P.2d at 712 (citation and internal quotations marks omitted). In the instant case, the record, as previously indicated, evinces that the prosecutor asked Officer Uehara two basic questions: (1) whether he had an opinion regarding Vliet's "state of sobriety"; and (2) whether he believed Vliet could safely operate his vehicle.

■ With regard to (1), we recognize that "any ... lay person, including a police officer, can have an opinion regarding sobriety." *State v. Toyomura*, 80 Hawai'i 8, 26–27, 904 P.2d 893, 911–12 (1995) (citation and internal quotation marks omitted). Indeed, "a lay witness may express an opinion regarding another person's sobriety, provided the witness has had an opportunity to observe the other person." *State v. Nishi*, 9 Haw.App. 516, 522, 852 P.2d 476, 479 (brackets and citation omitted), *reconsideration granted*, 9 Haw.App. 660, 853 P.2d 543 (1993). As such, the district court correctly permitted the prosecutor to ask Officer Uehara, who observed Vliet first hand on the night in question, for his lay opinion regarding Vliet's "state of sobriety."

■ The problem in the instant case, however, is that Officer Uehara answered the prosecutor's questions nonresponsively, proclaiming that "[Vliet] did poorly, he would be driving poorly, too[ ]" and that Vliet's state of sobriety "would have been over the legal limit." Clearly, Officer Uehara was attempting to offer a legal conclusion as to whether Vliet was DUI. Nevertheless, we hold that any error in connection with Officer Uehara's testimony was harmless beyond a reasonable doubt.

Moreover, this was a bench trial, and "[i]t is well established that a judge is presumed not to be influenced by incompetent evidence." *State v. Antone*, 62 Haw. 346, 353, 615 P.2d 101, 107 (1980) (citing *Ottman v. State*, 272 Ind. 262, 397 N.E.2d 273, 275–76 (1979); *State v. Brown*, 285 N.W.2d 843, 845 (S.D.1979); McCormick, Evidence § 60 (1972); Annotation, *Reception of Incompetent Evidence In Criminal Case Tried To Court Without Jury As Ground For Reversal*, 116 A.L.R. 558 (1938)). Given the absence of a jury in the case at bar, and in light of the substantial evidence contained in the record, see *supra* section II.A, we are convinced that there is no "reasonable possibility that error might have contributed to conviction." *See State v. Kaiama*, 81 Hawai'i 15, 22–23, 911 P.2d 735, 742–43 (1996) ("Error is not to be viewed in isolation and considered purely in the abstract. It must be examined in light of the entire proceedings and given the effect which the whole record shows it to be entitled. In that context, the real question becomes whether there is a reasonable possibility that error might have contributed to conviction." (Brackets and citation omitted)); HRPP Rule 52(a).

■ With regard to (2), that is, whether Vliet could safely operate his vehicle, we hold that this point was waived. As previously indicated, when the prosecution initially asked Officer Uehara whether he believed Vliet could safely operate his vehicle on the night in question, Vliet objected, stating that "[h]e's making an assumption[,]" an objection that is practically nonsensical in light of Vliet's concession that he was, in fact, operating his vehicle on the night in question. Regardless, Vliet did not assert, as he does now on appeal, that the question was impermissible based on the fact that it arguably called for a legal conclusion. This court has recognized that:

[HRE] Rule 103(a)(1)[5], which covers the situation where evidence is admitted at trial, requires a "specific" objection or mo-

5. HRE Rule 103(a)(1) provides that:

(a) Effect of erroneous ruling. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, *and:*

(1) Objection. In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context[.]
(Emphasis added.)

tion to strike if the ground is "not apparent from the context." The opponent can run afoul of rule 103(a)(1) in [various] ways. A complete failure to object will waive the point. *Waiver will also occur when the trial objection, properly overruled, differs from that pressed on appeal.*

*Tabieros v. Clark Equip. Co.*, 85 Hawai'i 336, 379 n. 29, 944 P.2d 1279, 1322 n. 29 (1997) (emphasis in original) (some brackets in original) (quoting A. Bowman, *Hawaii Rules of Evidence Manual* 7–9 (1990)) (citing *Wallace*, 80 Hawai'i 382, 410, 910 P.2d 695, 723 (1996)) (point of error waived where appellate challenge to testimony establishing weight of cocaine was premised on questioned accuracy of police scale, but trial objection had raised only relevance); *State v. Matias*, 57 Haw. 96, 101, 550 P.2d 900, 904 (1976) ("[T]here can be no doubt that the making of an objection upon a specific ground is a waiver of all other objections." (Citation and internal quotation marks omitted.)). Insofar as the district court properly overruled Vliet's objection, we reject Vliet's contentions. Even if we were to assume that the district court erred by permitting the prosecution to ask Officer Uehara whether he believed that Vliet was able to operate his vehicle safely, we hold, for reasons already discussed *supra*, that any such error was harmless beyond a reasonable doubt.

### III.   *CONCLUSION*

Based on the foregoing, we affirm the district court's September 29, 1999 judgment of conviction and sentence.