STATE OF HAWAII, Plaintiff-Appellee, *v.* SOOGA MASANIAI, JR., Defendant-Appellant, and GOMARD KEAUPUNI OLAYAN, Defendant

NO. 6623

MAY 21, 1981

RICHARDSON, C.J., OGATA, MENOR AND CIRCUIT JUDGE LUM ASSIGNED BY REASON OF VACANCY*

---

* Retired Justice Kobayashi, who heard oral argument in this case, resumed private practice on October 16, 1980, and was therefore unable to continue on the case. See HRS § 602-10 (1980 Supp.), which also provides: "After oral argument of a case, if a vacancy arises or if for any other reason a justice is unable to continue on the case, the case may be decided or disposed of upon the concurrence of any three members of the court without filling the vacancy or the place of such justice."

OPINION OF THE COURT BY OGATA, J.

Defendant-appellant, Sooga Masaniai, Jr., appeals from his conviction on March 31, 1977, of three counts of robbery in the first degree in violation of HRS § 708-840(1)(b)(ii).

On June 13, 1976, at about 9:00 p.m., Ronald Pang, his brother Roland Pang, and their friend Gerrold Kam were walking along Ohenana Loop in Halawa towards the ferris wheel and lights of the 50th State Fair at the Aloha Stadium. A young Samoan male and a young Filipino male approached them from behind and asked for a match or a cigarette. They replied that they did not have any, and walked back towards the intersection of Ohenana Loop and Kalaloa Boulevard. The Samoan youth then put his right arm around Gerrold's shoulder and asked him if he had a car. Ronald, who was walking ahead of Roland and Gerrold, told the Samoan to leave Gerrold alone. The Samoan walked up to Ronald, pushed him against a fence, held a gun to his throat, and said something like, "Don't act smart or you're going to get it."

The Filipino youth then told them to hand over their money and said that he had a "blade." Ronald gave his money to the Samoan youth, and Roland and Gerrold gave their money to the Filipino youth. The watches of Roland and Gerrold were also taken. The youths then ordered them not to look back and fled.

On July 20, 1976, Ronald, Roland, and Gerrold viewed a photo array at the police station. Gerrold positively identified the appellant as the Samoan assailant. Ronald also selected the photo of the appellant stating that it looked like the assailant but he was not positive. Roland selected two photos, one of which was that of the appellant, and then narrowed it down to the other photo stating that he was sixty percent sure.

Appellant was arrested pursuant to an arrest warrant on July 21, 1976, and taken to the police station for a lineup. He signed a police form requesting that an attorney be present. Detective Sisson contacted Deputy Public Defender John Chang at 6:30 p.m. Deputy

Public Defender Wayne Parsons notified the police that he would be at the police station at 7:00 or 7:15 p.m. The police waited until about 7:25 p.m. before conducting the lineup and Deputy Parsons arrived about five minutes later.

Only Ronald and Roland viewed the lineup because Gerrold had positively identified the appellant at the photo array. The seven lineup participants were asked to approach the witness viewing box and say, "Don't act smart or you're going to get it." Both Ronald and Roland identified the appellant as the Samoan assailant.

Appellant was indicted on September 8, 1976, in the First Circuit Court for three counts of robbery in the first degree in violation of HRS § 708-840(1)(b)(ii).

At the jury trial, appellant was tried together with co-defendant Gomard Keaupuni Olayan. Ronald and Roland testified as to their prior lineup identification, and Ronald, Roland, and Gerrold also identified the appellant in court.

Appellant testified that on the evening of the robbery he was at home singing and playing his guitar with his brother and friends on his front lawn and in the garage. He further testified that he only left briefly to drive his mother to and from church at approximately 6:00 and 10:00 p.m. Appellant's testimony was corroborated by the testimony of his father and a friend.

On March 31, 1977, appellant was convicted of robbery in the first degree on all three counts, and on June 16, 1977, was sentenced to a term of imprisonment for four years as a young adult offender.

Co-defendant Olayan was convicted of robbery in the second degree on three counts and subsequently sentenced to probation. Olayan did not join Masaniai in this appeal.

I.

Appellant contends that he could have been sentenced to a term of life imprisonment on each of the three counts of robbery in the first degree charged in the indictment. Thus, he argues that he was entitled to twelve peremptory challenges on voir dire pursuant to Rule 24(b), Hawaii Rules of Penal Procedure. That rule provides that "[i]f the *offense* charged is punishable by life imprisonment, each side is entitled to 12 peremptory challenges." (Emphasis added.)

Robbery in the first degree is a Class A felony which ordinarily carries the possibility of a twenty-year term of imprisonment. HRS §§ 708-840(1)(b)(ii) and 706-660. If the offense charged is not punishable by life imprisonment and two defendants are jointly put on trial for that offense, each of the defendants is entitled to two peremptory challenges. Rule 24(b), H.R.P.P. In the instant case, defendant-appellant and co-defendant each were permitted two perremptory challenges on voir dire.

Appellant argues that the court could have imposed a maximum term of life imprisonment pursuant to the multiple offender provision of HRS § 706-662(4). Under that section, the court must find that:

(a) the defendant is being sentenced for two or more felonies or is already under sentence of imprisonment for felony; or

(b) the maximum terms of imprisonment authorized for each of the defendant's crimes, if made to run consecutively would equal or exceed in length the maximum of the extended term imposed, or would equal or exceed forty years if the extended term imposed is for a class A felony.

The court must then find that the defendant's "criminality was so extensive that a sentence of imprisonment for an extended term is warranted." HRS § 706-662(4). We have held that "warranted" should be interpreted as "necessary for protection of the public." *State v. Huelsman,* 60 Haw. 71, 91, 588 P.2d 394, 406 (1978), *reh. denied,* 60 Haw. 308 (1979). *See also State v. Kamae,* 56 Haw. 628, 548 P.2d 632 (1976).

At the voir dire stage, it is uncertain whether the extended term provision for a multiple offender is applicable. Appellant was not being sentenced for two or more felonies, nor already under sentence of imprisonment for a felony. The court could not have presumed at that stage that the appellant was guilty of any of the three counts of robbery in the first degree.

Furthermore, the court had the discretion to not impose an extended term sentence even if the appellant met all of the requirements for a multiple offender. Legislative history shows that HRS § 706-662(4) only establishes the minimal requirements for finding that a defendant is a multiple offender and does not make the finding compulsive. Model Penal Code, comments at 1-42 (Tent. Draft No. 2, 1954).

In addition, the court could consider alternative sentences. For example, as a young adult offender, the court could have sentenced the appellant, as it actually did in its sentence in this case, to a special indeterminate term of imprisonment in lieu of any other sentence of imprisonment. HRS § 706-667. The court also could have suspended the imposition of a sentence or sentenced the appellant to probation. HRS §§ 706-620 and 706-622. Thus, appellant was not entitled to twelve peremptory challenges pursuant to Rule 24(b), H.R.P.P. because none of the offenses charged was punishable by a term of life imprisonment.

We also note that after exhausting his two peremptory challenges on voir dire, the appellant did not argue that he was entitled to twelve challenges and intended to exercise all of them. There was no intimation that he was dissatisfied with the jury as impaneled. We find that the trial court did not err in allowing the appellant two peremptory challenges.

## II.

Second, the appellant alleges that the trial court erred in admitting into evidence eyewitness pre-indictment lineup and in-court identifications. He argues that the lineup identifications should have been suppressed because they were conducted in violation of his right to assistance of counsel as guaranteed by the Sixth Amendment to the United States Constitution.[1] In addition, he argues that the courtroom identifications should have been suppressed because they were tainted by the prior unconstitutional identifications.

The United States Supreme Court has established that the Sixth Amendment right to assistance of counsel attaches at critical stages of the criminal prosecution. *Powell v. Alabama*, 287 U.S. 45 (1932).[2]

---

[1] Article I, § 14 of the Hawaii Constitution provides a similar right to an accused. *See* Reponte v. State, 57 Haw. 354, 556 P.2d 577 (1976); State v. Dicks, 57 Haw. 46, 549 P.2d 727 (1976).

[2] *See* Brewer v. Williams, 430 U.S. 387 (1977) (preliminary hearing); Coleman v. Alabama, 399 U.S. 1 (1970) (preliminary hearing); White v. Maryland, 373 U.S. 59 (1963) (preliminary hearing); Hamilton v. Alabama, 368 U.S. 52 (1961) (arraignment).

In *United States v. Wade*, 388 U.S. 218, 227 (1967), the court defined a "critical stage" as any stage where "potential substantial prejudice to defendant's rights inheres." The Court held that a post-indictment lineup is such a critical stage which requires the assistance of counsel. In the companion case, *Gilbert v. California*, 388 U.S. 263 (1967), the Court applied the holding of *United States v. Wade, supra*, to state cases by the Fourteenth Amendment.[3]

Courtroom identifications also may not be admitted into evidence if the post-indictment lineup was held in violation of the Sixth Amendment. In *United States v. Wade, supra*, the witnesses identified the defendant at trial, but did not testify on direct examination that they had previously identified him at an uncounseled lineup. The Court held that the in-court identifications should have been excluded unless the prosecution established by "clear and convincing evidence that the in-court identifications were based upon observations of the suspect other than the lineup identification." *Id.* at 240.

In *Gilbert v. California, supra*, the three witnesses identified the defendant at trial and also testified on direct examination that they had previously identified him at the lineup. The Court established a *per se* exclusionary rule and held that the prosecution could not buttress its case by introducing evidence of the out-of-court identifications made in violation of the defendant's Sixth Amendment rights. *Id.* at 272-73.

Subsequently, in *Kirby v. Illinois*, 406 U.S. 682, 689 (1972), the Court clarified that the Sixth Amendment right to assistance of counsel only attaches "at or after the initiation of adversary judicial criminal proceedings — whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." The Court held that there was no Sixth Amendment right to assistance of a counsel at a showup conducted after the accused had been arrested but before he had been indicted or formally charged.[4] Thus, the

---

[3] *See* Gideon v. Wainwright, 372 U.S. 335 (1963).

[4] *See* State v. Washington, 56 Ohio App.2d 129, 381 N.E.2d 1142 (1978); Hopkins v. State, 269 Ind. 571, 382 N.E.2d 147 (1978); State v. Matthews, 295 N.C. 265, 245 S.E.2d 727 (1978); *cert. denied*, 439 U.S. 1128 (1979); State v. Sanders, 33 N.C. App. 284, 235 S.E.2d 94 (1977); People v. Chojnacky, 8 Cal.3d 759, 505 P.2d 530, 106 Cal. Rptr. 106 (1973); Commonwealth v. Lopes, 362 Mass. 448, 287 N.E.2d 118 (1972).

*Wade-Gilbert per se* exclusionary rule for out-of-court identifications was inapplicable.

In the instant case, the police station lineup was conducted after appellant was arrested pursuant to a warrant but before he was indicted or charged at a preliminary hearing. Appellant contends that the issuance and execution of an arrest warrant based upon tentative identifications from the photo array constituted the initiation of adversary criminal proceedings which triggered his Sixth Amendment right to.counsel. Appellant bases his argument on *United States ex rel. Burton v. Cuyler*, 439 F. Supp. 1173 (E.D. Penn. 1977). However, in *Burton, supra,* the issuance of a warrant initiated prosecution under Pennsylvania law. In addition, the district court cited *United States ex rel. Robinson v. Zelker*, 468 F.2d 159 (2d Cir. 1972), *cert. denied*, 411 U.S. 939 (1973), where an arrest warrant based upon information and oath pursuant to New York law commenced adversary judicial proceedings.

Appellant argues that HRS § 701-108(5) similarly establishes that the issuance of an arrest warrant commences prosecution in Hawaii for Sixth Amendment purposes. We disagree. Section 701-108(5) only defines when the statute of limitations begins to run in criminal cases and does not define when adversary criminal judicial proceedings commence.

Under Rule 3 of the Hawaii Rules of Penal Procedure, an arrest warrant may be issued upon a finding of mere probable cause. A formal charge or indictment requires a stronger showing of guilt.[5] The issuance and execution of an arrest warrant alone does not constitute the initiation of adversary criminal proceedings. *Kirby v. Illinois, supra; Moore v. Illinois*, 434 U.S. 220 (1977).

The United States Supreme Court has emphasized that:

The initiation of judicial criminal proceedings is far from a mere formalism. It is the starting point of our whole system of adversary criminal justice. For it is only then that the government has committed itself to prosecute, and only then that the adverse positions of government and defendant have solidified.

---

[5] Draper v. United States, 358 U.S. 307, 310-11 (1959); Brinegar v. United States, 338 U.S. 160, 172-73 (1949).

*Kirby v. Illinois, supra* at 689. The Court further established that it will not "import into a routine police investigation an absolute constitutional guarantee historically and rationally applicable only after the onset of formal prosecutorial proceedings." *Id.* at 690.

The instant case is similar to *Lomax v. State of Alabama,* 629 F.2d 413 (5th Cir. 1980), where a robbery witness identified the defendant from a photo array. A few days later, defendant was arrested pursuant to a warrant and taken into custody. The next day at a lineup, a second witness selected the defendant. At the trial, the first witness identified the defendant as one of the robbers and the second witness identified him as the person she selected at the lineup. The Fifth Circuit Court held that absent significant prosecutorial involvement in procuring the arrest warrant, the arrest was purely investigatory and the Sixth Amendment right to counsel did not attach. *Id.* at 416. In the instant case, there is nothing in the record that indicates that the prosecutor was involved in procuring the arrest warrant.

We hold that a pre-indictment lineup is not a critical stage of the criminal proceeding and that the Sixth Amendment did not entitle appellant to assistance of counsel. Although Detective Sisson had arranged for an attorney to represent appellant at the lineup and an attorney had been present for most of the lineup,[6] assistance of counsel was not required prior to indictment or formal charge. Thus, the trial court properly admitted into evidence testimony regarding the lineup identifications and courtroom identifications.

III.

Third, the appellant contends that the pretrial lineup identification violated his due process rights, and thus, such evidence should have been suppressed. The United States Supreme Court has

---

[6] Deputy Public Defender Wayne Parsons arrived about five minutes after the lineup had begun and the police were conducting a profile turn. During the remaining ten minutes, he noted his objections on paper. Parsons spoke briefly with Detective Sisson after the lineup, and sent him a letter noting his objections the following day. Thus, arguably, this case may be treated and decided as though appellant was represented by counsel because appellant's counsel was notified and present at the lineup for a substantial part of the time. *See Kirby, supra.*

recognized that independent of the Sixth Amendment right to assistance of counsel, the Fifth and Fourteenth Amendments protect an accused at a lineup. *Kirby v. Illinois, supra* at 690-91, citing *Stovall v. Denno,* 388 U.S. 293 (1967); *Foster v. California,* 394 U.S. 440 (1969). *See Moore v. Illinois, supra* at 227.

In *Stovall v. Denno, supra,* at 301-302, the Court held that a defendant is denied due process of law when a confrontation is "unnecessarily suggestive and conducive to irreparable mistaken identification." This determination must be made in light of the "totality of the circumstances" surrounding the confrontation. *Id.*

In *Neil v. Biggers,* 409 U.S. 188 (1972), the Court further established that the factors to be considered in determining whether an identification is reliable include:

the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and confrontation.

*Id.* at 199-200. *Manson v. Brathwaite,* 432 U.S. 98, 114 (1977).[7]

We adopted the *Neil v. Biggers, supra,* analysis in *State v. Padilla,* 57 Haw. 150, 552 P.2d 357 (1976), to determine whether under the "totality of the circumstances" a photographic identification was reliable. *See Simmons v. United States,* 390 U.S. 377 (1968).

Subsequently, in *State v. Bennett,* 62 Haw. 59, 610 P.2d 502 (1980), we applied the *Neil v. Biggers, supra,* analysis to a showup identification. A robbery victim identified the defendant at a showup based upon his physical characteristics and clothing, not his facial features. The victim testified that when he awoke early in the morning, the light from outside his apartment was bright enough for him to see the robbers in his living room. We concluded that the showup held fifteen to twenty minutes after the crime did not "give rise to a substantial likelihood of misidentification." *Id.* at 68, 610 P.2d at 508.

---

[7] Although the confrontation in Neil v. Biggers, 409 U.W. 188 (1972), occurred prior to Stovall v. Denno, 388 U.S. 293 (1967), the Court held in Manson v. Brathwaite, 432 U.S. 98, 114 (1977), that "reliability is the linchpin in determining the admissibility of identification testimony for both pre- and post-Stovall confrontations."

In the instant case, the appellant contends that the lineup violated his due process rights because he was the only one of the seven lineup participants who met the description of a young Samoan male with a small Afro hairstyle. He argues that three participants were obviously wearing wigs and two had straight hair. Appellant also objects to the false mustaches worn by the participants who did not have mustaches so as to resemble his appearance at the time of the lineup.

The United States Supreme Court has recognized that an accused may be compelled to participate in a lineup for observation of identifiable physical characteristics by a witness. *United States v. Wade, supra* at 222-23. The Fifth Amendment privilege against self incrimination only applies to testimonial evidence and does not extend to a compulsory display of physical characteristics. Thus, an accused may be required to participate in a lineup, give voice exemplars, or wear a wig,[8] hat,[9] or specified clothing.[10]

While it would have been ideal if all the lineup participants were Samoan, about the same age, physique, and had the same hair style as the appellant, we recognize that this is not always feasible. The alternative, a one-to-one showup, presents a greater risk of mistaken identification and has been widely condemned. *See Moore v. Illinois, supra; Stovall v. Denno, supra; State v. Bennett, supra.* We find that the use of wigs and false mustaches by the lineup participants, and the weight and height variations did not establish that the witnesses would unfairly single out appellant.[11]

---

[8] United States v. Boatwright, 425 F. Supp. 747 (E.D. Penn. 1977); People v. Cwikla, 46 N.Y.2d 434, 386 N.E.2d 1070, 414 N.Y.S.2d 102 (1979).

[9] State v. Classen, 31 Or. App. 683, 571 P.2d 527 (1977).

[10] *See* Schmerber v. California, 384 U.S. 757 (1966); People v. Williams, 68 Cal. App.3d 36, 137 Cal. Rptr. 70 (1977); People v. Evans, 90 N.Y. Misc.2d 195, 393 N.Y.S.2d 674 (1977); Wilson v. State, 237 Ga. 657, 229 S.E.2d 424 (1976); People v. Heading, 39 Mich. App. 126, 197 N.W.2d 325 (1972).

[11] *Cf.* United States v. Porter, 430 F. Supp. 208 (N.D.N.Y. 1977), where defendant was the only lineup participant with a beard and was of slight build; State v. Boucher, 376 A.2d 478 (Me. 1977); where there was some disparity in the heights of the lineup participants and only four of the six men had mustaches as the assailant was described; Smith v. State, 236 Ga. 5, 222 S.E.2d 357 (1976), where defendant was the only lineup participant with blond hair; State v. Cole, 519 S.W.2d 370 (Mo. App.

We conclude that under the *Neil v. Biggers, supra,* analysis, the lineup identification in the instant case was reliable. The witnesses had a sustained opportunity to observe the suspect. Although the robbery occurred at night, the witnesses were walking towards an intersection illuminated by two street lights.[12] The incident lasted about ten or fifteen minutes, and both Ronald and Roland testified that they had no difficulty seeing the suspect. Ronald was within a foot of the Samoan who held a gun to his throat and took his money. Ronald also testified that before leaving the area after the robbery as ordered, he turned and had a full view of the Samoan's face. Roland testified that he came within one or two feet of the Samoan at the intersection and was able to see his features in the light.[13]

The descriptions given to the police were sufficiently complete to render the subsequent identification reliable. Ronald described the assailant as a Samoan male in his twenty's, about five feet seven to eight inches tall, about 180 pounds, dark complexion, small Afro hairstyle. Roland described the assailant as a Samoan male, nineteen years old, five feet nine inches tall, 160 pounds, dark complexion, small Afro hairstyle. At the time of the lineup, appellant was eighteen years old, five feet six inches tall, and 160 pounds.

Although Ronald and Roland viewed the lineup at the same time, they were not permitted to converse, and independently identified the appellant as the Samoan assailant. Ronald testified that it did not occur to him that any of the lineup participants were wearing wigs and that he selected the appellant based on his independent memory of the appearance and voice of the assailant at the time of the robbery. Roland testified that he selected the appellant as soon as the lineup participants walked out. Although he thought that two of the participants were wearing wigs, he testified that the voice of the appellant sounded like that of the assailant.

---

1975), where defendant was the only lineup participant with red hair; Israel v. Odom, 521 F.2d 1370 (7th Cir. 1975), where defendant was the only person wearing eyeglasses.

[12] *Cf.* Coleman v. Alabama, 399 U.S. 1 (1970), where the witness had a fleeting look at his assailant in the headlights of a passing car.

[13] *Cf.* People v. Collins, 52 Ill. App.3d 114, 368 N.E.2d 685 (1977), where the assailant had a stocking over his face but was identified based on his height, weight, and voice.

We also find that the use of appellant's photo in a prior photo array did not undermine the reliability of the lineup identification. The lineup procedure in the instant case did not reach the degree of suggestiveness as in *Foster v. California*, 394 U.S. 440 (1969), where the defendant was first placed in a lineup with two men six inches shorter, then brought into a room for a one-to-one confrontation, and placed in a second lineup with four different men. The Court held that the identification procedure "made it all but inevitable" that the defendant would be selected "whether or not he was in fact 'the man.' " *Id.* at 443.[14]

Under the totality of the circumstances, we find that the lineup identifications were reliable and that the due process rights of the appellant were not violated. Thus, the weight of the identification testimony and the credibility of the witnesses were for the jury to determine. *Manson v. Brathwaite, supra* at 116. The defense counsel could cross-examine the witnesses, point out any suggestibility in the identification procedure, and present countervailing testimony such as alibi. *Id.* at 113-14 n.14, quoting *Clemons v. United States*, 408 F.2d 1230, 1251 (D.C. Cir. 1968).[15] The trial court did not err in admitting into evidence the identification testimony.

## IV.

Finally, the appellant contends that the trial court violated his due process right to present evidence by not permitting the defense witnesses to testify regarding their observations of the lineup.

However, the record reflects that defense witnesses were permitted to testify as to what they saw at the lineup. The trial court only restricted testimony regarding their impressions of the lineup.

In the prior section, we concluded that the weight of the identification testimony and the credibility of the witnesses were to be

---

[14] *See* Bellew v. Gunn, 424 F. Supp. 31 (N.D. Cal. 1976).

[15] United States v. Crawford, 576 F.2d 794 (9th Cir.), *cert. denied*, 439 U.S. 851 (1978); State v. Flash, 418 A.2d 158 (Me. 1980); State v. Broucher, 388 A.2d 907 (Me. 1978); People v. Caudillo, 63 Cal. App.3d 995, 134 Cal. Rptr. 176 (1977); People v. Smith, 52 Ill. App.3d 53, 367 N.E.2d 84 (1977); State v. Maki, ___ Minn. ___, 260 N.W.2d 294 (1977); State v. Classen, 31 Or. App. 683, 571 P.2d 527 (1977).

determined by the jury. Thus, the trial court did not err in refusing to permit the defense witnesses to testify as to their impressions of the lineup. A photograph of the lineup was in evidence and the jury could draw its own impressions or inferences.

Affirmed.

*Renee M.. L. Yuen,* Deputy Public Defender, for defendant-appellant.

*Roland L. H. Nip,* Deputy Prosecuting Attorney, for plaintiff-appellee.