7 P.3d 193

STATE of Hawai'i, Plaintiff–Appellee,

v.

Dennis K. FERM, Defendant–Appellant.

No. 21648.

Intermediate Court of Appeals of Hawai'i.

Aug. 23, 2000.

Certiorari Denied Sept. 13, 2000.

Steven T. Barta, Honolulu, on the briefs, for defendant-appellant.

Alexa D.M. Fujise, Deputy Prosecuting Attorney, City and County of Honolulu, on the briefs, for plaintiff-appellee.

BURNS, C.J., WATANABE and LIM, JJ.

Opinion of the Court by LIM, J.

Defendant–Appellant Dennis K. Ferm (Defendant) appeals the May 12, 1998 judgment of the District Court of the First Circuit, in which the court convicted him of driving under the influence of intoxicating liquor (DUI), in violation of Hawai'i Revised Statutes (HRS) § 291–4(a)(1),[1] and sentenced him to (1) fourteen hours of alcohol abuse counseling, (2) suspension of his driver's license for ninety days, with the first thirty days absolute and the next sixty days on conditional permit to drive to and from work or any counseling, and (3) a $150 fine and $107 in fees. The court stayed his sentence pending appeal.

For the following reasons, we affirm.

## I. Background.

On February 25, 1998, at approximately 5:28 p.m., Defendant was driving on Auahi Street in Honolulu when his vehicle hit a parked pickup truck, causing it to collide with another parked vehicle.

Rodney Kahalepuna (Kahalepuna), a security guard at the nearby Ward Warehouse, rushed to the scene after hearing a loud, crashing noise. Kahalepuna saw Defendant attempting to get out of the driver's seat. He appeared to be disoriented and in shock. When questioned by Kahalepuna, Defendant answered that he was all right, but that he needed to use the restroom.

Kahalepuna escorted Defendant to a nearby restroom. On the way, Kahalepuna placed his hand on Defendant's back three different times to stabilize him, because he felt that Defendant was going to collapse. As they were returning to the accident scene from the restroom, Defendant wondered aloud, "How the fuck did I do this?"

Kahalepuna was not sure whether Defendant was under the influence of alcohol. He did not smell alcohol on Defendant's breath.

Honolulu Police Department (HPD) Officer G. Jhun (Officer Jhun) arrived at the accident scene at approximately 5:30 p.m. Defendant told Officer Jhun that he was the driver of the Lexus involved in the accident and that his back was sore, but that he was all right. Officer Jhun noticed that Defendant's eyes were glassy and that his breath smelled of an "alcoholic-like beverage."

HPD Officer Candace Yoshimura (Officer Yoshimura) arrived at the scene at approximately 5:31 p.m. Defendant told Officer Yoshimura that he was not hurt and did not need medical attention. Officer Yoshimura observed, however, that Defendant was holding onto his left, lower back area. Officer Yoshimura also noticed that Defendant's pants appeared wet in the groin area.

---

**1.** Hawai'i Revised Statutes § 291–4(a)(1) (Supp. 1998) provides:

> (a) A person commits the offense of driving under the influence of intoxicating liquor if:
> (1) The person operates or assumes actual physical control of the operation of any vehicle while under the influence of intoxicating liquor, meaning that the person concerned is under the influence of intoxicating liquor in an amount sufficient to impair the person's normal mental faculties or ability to care for oneself and guard against casualty[.]

Officer Yoshimura noted Defendant's demeanor in her report:

While speaking with the driver, I detected a strong odor resembling that of an alcoholic like beverage coming from his breath and person. His speech was slurred and he was unable to complete a sentence without stopping and studdering (sic). He was unsteady on his feet, swaying side to side. He had to lean using his body and hands on the surrounding vehicles on several occassions (sic) for balance.

When Officer Yoshimura asked Defendant how the accident happened, he replied, "I was reaching for something and that's all I remember."

Officer Yoshimura asked Defendant to remove his sunglasses so she could see if he was complying with his corrective lenses license restriction. She noticed that "the blue part of his eyes began to bounce from side to side."

Because of the smell of alcohol on his breath and the circumstances of the accident, Officer Yoshimura asked Defendant to submit to a field sobriety test. Defendant refused, stating, "I'm not going to take a field test."

Tyler Teruya (Teruya), a paramedic with the City and County of Honolulu, arrived at the scene at approximately 5:34 p.m. He examined Defendant and did not find any visible injuries. He noticed that:

[Defendant] was at times staggering, and had to lean on certain objects, on the car. He just seemed a little bit discoordinated—uncoordinated at times.

He needed assistance with moving about, but he did follow simple commands, ... but on occasion, he'd lean on something. ... I guess he was dizzy or something, but he never complained of anything.

Teruya did not think Defendant's condition was caused by trauma, because Defendant "[had no] lasting injuries after the accident. [Defendant] was competent. He was answering questions appropriately. There was

an alcoholic odor to his breath. He did admit to drinking alcohol at the time."

Teruya noticed Defendant's incontinence. Teruya thought it indicated that Defendant was either under the influence of drugs or alcohol, or had lost consciousness. Teruya did not notice slurred speech or any indication of horizontal gaze nystagmus.[2]

HPD Officers W. Lu (Officer Lu) and Dona Cervantes–White (Officer Cervantes) arrived together at the scene of the accident at approximately 5:36 p.m.

Officer Lu detected a moderately strong odor of an alcoholic beverage on Defendant's breath.

Officer Cervantes noticed that Defendant had bloodshot eyes and the smell of alcohol on him. Defendant admitted to her that he had been drinking. Defendant's speech was slurred and slow, but he told her that he did not have a speech impediment.

Officer Cervantes observed that Defendant was unsteady on his feet, had to lean on his vehicle several times and could not stand up on his own. While Officer Cervantes was checking Defendant for facial injuries, she noticed Defendant's eyes "bouncing" from side to side.

At trial, Officer Cervantes explained why she asked Defendant to submit to a field sobriety test:

Q [PROSECUTOR]: Why would you ask him to submit to the field sobriety test if you may have thought he had a head injury?

You said the two reasons were either because he had a high alcohol content, or he had a head injury. Why would you ask him to submit to the field sobriety test?

A [OFFICER CERVANTES]: Because he had no indication that he had a head injury, and he had indications that he was possibly under the influence.

Q [PROSECUTOR]: And what indications were that? What indications did you notice?

---

2. Nystagmus is "an involuntary rapid movement of the eyeball, which may be horizontal, vertical, rotatory, or mixed, i.e., of two varieties." *The*

*Sloane–Dorland Annotated Medical–Legal Dictionary,* 1987, p. 504.

A [OFFICER CERVANTES]: He was unsteady on his feet. He had to lean on his vehicle several times. He could not stand up on his own.

He had a problem with searching for something within his vehicle. He kept handing papers to another officer, saying this is it.

He smelled like a beverage that of an alcoholic content. His eyes were bloodshot. And he stated that he had been drinking.

Defendant refused "several times" when Officer Cervantes asked him to take the field sobriety test. Defendant "stated that he would not, because he was not good at it."

Because of the circumstances of the accident, Defendant's impaired demeanor, the smell of alcohol on his breath and his refusal to undergo a field sobriety test, Officer Cervantes placed Defendant under arrest for DUI.

HPD Officer Andrew Beam (Officer Beam) arrived at the scene at approximately 6:03 p.m., took Defendant into custody and transported him to the police station.

At the police station, Officer Cervantes informed Defendant about his choices and the related consequences with respect to taking or refusing to take a blood-alcohol test. Defendant refused to take any blood-alcohol test.

Defendant claims he later reconsidered his refusal to take a blood-alcohol test and requested "one of the State's tests" from an "Officer Yuen," who was "not one of the officers that were involved in his arrest, or mentioned in the police report." Defendant claims that his request was denied.

Defendant presented no evidence at trial or at any other time to establish that this event transpired. Defendant's claim is based only upon his attorney's representations during pretrial proceedings. Defense counsel also represented to the court that an Officer Yuen had been subpoenaed for trial, but the subpoenaed officer turned out to be the wrong "Officer Yuen." Defense counsel further represented to the court that Defendant could testify to the event, but Defendant did not testify.

After Defendant was cited by the police for DUI, he posted bail and was released at 10:35 p.m.

Defendant filed a Motion to Dismiss and/or Suppress Evidence on April 23, 1998, asserting (1) that his actions did not give the police reasonable grounds to detain him, nor probable cause to arrest him, (2) that after his arrest he was not advised of his *Miranda* rights and consequently made incriminating statements, and (3) that he requested but was denied an opportunity to take one of the State's chemical tests to determine his blood-alcohol content.

A day later, Defendant filed his Second Motion to Dismiss and/or Suppress Evidence, which relied upon the same grounds as the first, plus an additional ground—that he was denied his right to counsel and hence was not advised of his right to independent chemical testing.

The second motion included a declaration by Dr. Ronald Kienitz (Dr. Kienitz), an expert medical witness for the defense, stating that Defendant's actions and demeanor at the scene were more probably caused by physical trauma than by intoxication:

Based upon my training and experience as a physician, it is my opinion that Mr. Ferm very most probably sustained violent buffeting to his cranium which more likely than not caused this and other neurological deficits described in the [police] reports. He probably sustained a transient loss or altered state of consciousness followed by a period of decreased neurological functioning. Loss of bladder control and other symptoms noted by the [paramedic] and police personnel are common symptoms following significant trauma and/or brief loss of consciousness. I conclude that the incontinence and the neurological symptoms described were most probably caused by physical trauma. Under these circumstances, procedures administered for field sobriety testing would be of absolutely no value in determining chemical impairment such as that due to alcohol.

At trial, Dr. Kienitz testified that he was not present at the accident and had never physically examined Defendant. Dr. Kienitz

based his opinion upon the police reports and his interview with the Defendant, which took place when Defendant called and asked him to be a trial witness.

On May 12, 1998, the court denied both motions. The companion charge of driving without no-fault insurance, HRS § 431:10C–104(a), was dismissed with prejudice by the prosecution. Bench trial commenced immediately after those pretrial proceedings.

During the trial, the various police reports were stipulated into evidence, and photographs of Defendant's car were admitted into evidence. Testimonial evidence was taken from Officer Cervantes and Teruya, for the State, and from Kahalepuna and Dr. Kienitz, for Defendant. After closing arguments, the court found Defendant guilty of violating HRS § 291–4(a)(1), driving under the influence of intoxicating liquor.

On June 10, 1998, Defendant filed a timely notice of appeal from the May 12, 1998 judgment.

## II. Issues Presented.

Defendant contends on appeal that:

1. He was denied his federal and state constitutional rights to counsel during his arrest for DUI and his subsequent detainment and accordingly, the court should have granted his second motion to dismiss and/or suppress evidence;

2. The court committed reversible error by applying an improper standard of proof to find him guilty; and

3. The court committed reversible error by drawing an inference adverse to him from evidence of his refusal to participate in a field sobriety test.

## III. Standards of Review.

### A. Motion to dismiss and/or suppress.

■ The court's denial of Defendant's second motion to dismiss and/or suppress evidence, to the extent that it was based on a point of constitutional law, is reviewed under the right/wrong standard. *State v. Hoang,*

86 Hawai‘i 48, 51, 947 P.2d 360, 363 (1997) (citations omitted).

### B. Erroneous interpretation and application of standard of proof.

■ Defendant's second point on appeal concerns the court's interpretation and application of the standard of proof "beyond a reasonable doubt," a question of law. Questions of law are reviewed *de novo* under the right/wrong standard.

### C. Question of constitutional law.

■ Defendant asserts that the court violated his constitutional right against self-incrimination when it inferred consciousness of guilt from his refusal to submit to a field sobriety test. "We answer questions of constitutional law by exercising our own independent constitutional judgment based on the facts of the case. Thus, we review questions of constitutional law under the right/wrong standard." *State v. Hanapi,* 89 Hawai‘i 177, 182, 970 P.2d 485, 490 (1998).

## IV. Discussion.

### A. Motion to Dismiss and/or Suppress.

As previously detailed, Defendant based his second motion to dismiss and/or suppress evidence on several grounds. At the pretrial hearing on his motion, Defendant argued only one of them—that after his arrest he was denied his right to counsel, which prevented him from preserving evanescent, exculpatory evidence by, among other things, taking the State's chemical test or having his blood independently tested.

On appeal, Defendant presents the same single grievance, arguing that the court erred in denying his second motion because he was denied his right to counsel, and that the lack of his counsel's advice and assistance prevented him from preserving exculpatory evidence. Defendant claims the prejudice he suffered in losing such evidence mandates dismissal, regardless of the good faith or bad faith of the police, under article I, section 5 of the Hawai‘i State Constitution.[3]

---

3. Article I, section 5 of the Hawai‘i State Constitution states: "No person shall be deprived of

life, liberty or property without due process of law, nor be denied the equal protection of the

With respect to the court's denial of Defendant's second motion, we will consider this single grievance properly presented by Defendant on appeal. Hawai'i Rules of Appellate Procedure Rule 28(b)(4).

When Defendant complains of a "denial" of his right to counsel, he is not asserting that he requested but was denied an attorney during his detainment. Defendant concedes that he made no express request for an attorney during his arrest or his post-arrest incarceration.

■ Instead, Defendant maintains that he was denied his right to counsel because of (1) a putative police policy of not allowing those arrested for DUI to consult with counsel and (2) a failure of the police to advise him of the right to counsel he claims he enjoyed at the time of his arrest and post-arrest detainment.

Defendant contends that the failure of the State to afford him his right to counsel during his arrest and post-arrest detainment violated the sixth amendment to the United States Constitution and article I, section 14 of the Hawai'i State Constitution.[4] Defendant argues that the transitory nature of crucial evidence in a DUI case requires that his sixth amendment right to counsel attach at the point of arrest:

> The timeliness of counsel's efforts to preserve evidence is critical because the most important evidence, i.e., evidence of intoxication, like the arrested person's physical coordination, the arrested person's blood-alcohol level both as close to the time of driving as possible, by its very nature dissipates and is forever lost as time passes and any alcohol ingested by the arrested person is digested and its effects on the body pass.

Binding Hawai'i precedent directly refutes Defendant's contention.

■ The Hawai'i Supreme Court has held that the sixth amendment to the United States Constitution gives a person accused of a crime the right to legal counsel only "at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *State v. Masaniai,* 63 Haw. 354, 359, 628 P.2d 1018, 1022 (1981)(citing *Kirby v. Illinois,* 406 U.S. 682, 689, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972))(internal quotation marks omitted). Furthermore, "[t]he issuance and execution of an arrest warrant alone does not constitute the initiation of adversary criminal proceedings." *Id.* at 360, 628 P.2d 1018, (citations omitted).

Although the police cited Defendant for DUI at the police station before he was released on bail, this event was not the initiation of adversary judicial criminal proceedings. Hawai'i Rules of Penal Procedure Rule 7(a) provides that:

> The charge against a defendant is an indictment, a complaint or an oral charge filed in court. A felony shall be prosecuted by an indictment or a complaint. Any other offense may be prosecuted by an indictment, a complaint, or an oral charge.

■ Moreover, in Hawai'i, adversary judicial criminal proceedings can only be initiated by the prosecutor. *State v. Knoeppel,* 71 Haw. 168, 170, 785 P.2d 1321, 1322 (1990); *State v. Radcliffe,* 9 Haw.App. 628, 639–40, 859 P.2d 925, 932–33 (1993). *See also Masaniai,* 63 Haw. at 361, 628 P.2d at 1023 (absent significant prosecutorial involvement in procuring the arrest warrant, the warrant cannot constitute the initiation of adversary judicial criminal proceedings).

As authority for his contrary position, Defendant relies on two cases from the Supreme Court of Washington, *City of Tacoma v. Heater,* 67 Wash.2d 733, 409 P.2d 867 (1966), and *State v. Fitzsimmons,* 93 Wash.2d 436, 610 P.2d 893 (1980).

---

laws, nor be denied the enjoyment of the person's civil rights or be discriminated against in the exercise thereof because of race, religion, sex or ancestry."

4. The sixth amendment to the United States Constitution states, in pertinent part: "In all criminal prosecutions, the accused shall enjoy the

right to . . . have the Assistance of Counsel for his defense." Its State counterpart, article I, section 14 of the Hawai'i State Constitution, states, in relevant part: "In all criminal prosecutions, the accused shall enjoy the right to . . . have the assistance of counsel for the accused's defense."

Both cases appear to hold that, in a DUI case, the sixth amendment right to counsel attaches at or near the point of arrest because of a defendant's need to preserve evanescent evidence. *Tacoma*, 409 P.2d at 871; *Fitzsimmons*, 610 P.2d at 897–901.

Defendant's position is basically an invitation to overrule well-established Hawai'i precedent on the strength of these Washington cases. We cannot accept his invitation, not only because Washington cases are inapposite precedent, but because the Washington cases do not really support Defendant's position.

In *Tacoma*, 409 P.2d at 868–69, the defendant was arrested and taken to the police station where certain tests were administered. He was then charged with DUI by citation but was denied contact with counsel until the next morning. In *Fitzsimmons*, 610 P.2d at 895–97, the defendant was charged with DUI by citation at the point of arrest and immediately requested counsel, but his request was denied.

In both Washington cases, the police issued the DUI citation. Similarly, in our case the police issued the DUI citation to Defendant during his post-arrest detainment.

The Washington court held in both of its cases that the sixth amendment right to counsel attached at the point of citation. Why then, Defendant would query, do we not reach the same conclusion in this case?

The difference lies in the fact that Washington law allows for the initiation of adversary judicial criminal proceedings by way of police citation and notice to appear in court.

Rule 2.1(a) of the Criminal Rules for Courts of Limited Jurisdiction (CrRLJ) of the Washington Court Rules (1999) provides that "[e]xcept as otherwise provided in this rule, all criminal proceedings shall be initiated by a complaint[,]" that "shall be signed by the prosecuting authority."

A DUI charge in Washington is, however, a gross misdemeanor. *Tacoma*, 409 P.2d at 883. Prosecution of a gross misdemeanor may be commenced by the arresting officer's issuance of a citation and notice to the arrestee:

Whenever a person is arrested or could have been arrested pursuant to statute for a violation of law which is punishable as a misdemeanor or gross misdemeanor the arresting officer, or any other authorized peace officer, may serve upon the person a citation and notice to appear in court.

CrRLJ Rule 2.1(b)(1).

The citation and notice constitute the initiation of adversary judicial criminal proceedings:

When signed by the citing officer and filed with a court of competent jurisdiction, the citation and notice shall be deemed a lawful complaint for the purpose of initiating prosecution of the offense charged therein.

CrRLJ Rule 2.1(b)(6).

Hence in the Washington cases, formal charge occurred at or near the point of arrest. Accordingly, the Washington court found a sixth amendment violation because the critical stage of formal charge, not mere arrest, had triggered the right to counsel. *Tacoma*, 409 P.2d at 871–72; *Fitzsimmons*, 610 P.2d at 897. It was in support of this holding that the Washington court discussed the importance of counsel's advice and assistance in preserving transitory evidence in a DUI case.

Clearly, it is upon the coincidence of arrest and formal charge in the Washington cases, and not authoritative principle, that Defendant relies. In this respect, Washington law is consonant with *Masaniai*, which disposes of this point on appeal. *See Masaniai*, 63 Haw. at 360, 628 P.2d at 1022–23 (rejecting defendant's contention that the right to counsel attaches upon the issuance and execution of an arrest warrant, because his supporting cases were decided under Pennsylvania and New York laws providing for the commencement of adversary judicial criminal proceedings upon issuance of an arrest warrant).

█ In connection with his sixth amendment argument, Defendant also claims that his fifth amendment rights were violated when the police failed to apprise him of his *Miranda* rights.

In this connection, Defendant is not referencing the prophylactic warnings, required

before the police can commence custodial interrogation, that were established in *Miranda v. Arizona*, 384 U.S. 436, 471–72, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Defendant does not argue in this appeal for suppression of any unwarned, in-custody statement, or evidence derived from such a statement.

Defendant is instead implying a new prophylactic requirement, premised upon his contention that the sixth amendment right to counsel attaches at the point of arrest in a DUI case. Defendant appears to argue that the right to counsel is meaningless to an ignorant defendant. Hence if the sixth amendment right to counsel does indeed attach at the point of arrest, it follows that the police must give *Miranda*-like warnings about the sixth amendment right to counsel at the point of a DUI arrest.

Because we conclude in this case that the sixth amendment right to counsel attached at the initiation of adversary judicial criminal proceedings, and not at the point of arrest, this singular *Miranda* argument must fail.

■ Finally, in connection with his complaint about the loss of exculpatory evidence, Defendant contends he recanted his refusal to take a blood-alcohol test, but was refused the test by an "Officer Yuen."

Defendant failed to produce any *evidence* at any time regarding the purported recantation and refusal. Representations by counsel, pretrial or on appeal, are no substitute. We therefore conclude that Defendant waived any errors regarding this point. *See State v. Ortiz*, 91 Hawai'i 181, 197–98, 981 P.2d 1127, 1143–44 (1999) (appellant waived any error in trial court's admission of evidence of other crimes because appellant "failed specifically to identify *any* evidence admitted at trial regarding the burglaries of which he had been acquitted") (emphasis in the original).

### B. Interpretation and Application of the Standard of Proof.

Defendant next complains that the court improperly applied the "proof beyond a reasonable doubt" standard in finding him guilty. He singles out part of the court's ruling for his purposes, as follows:

Whether or not you also were shaken up in the accident, I cannot say. I expect you probably were shaken up to some extent in the accident, but I don't think that that explains your performance. And, I—if, for example, you had—a particular defendant were impaired both by drugs and by alcohol, I don't think I have to parse it out as long as I can be satisfied in my own mind that a substantial degree of impairment was a result of alcohol. It'd be impossible. We'd be getting into metaphysics if I were trying to parse it out.

What is objectionable here, Defendant argues, is that the court failed to affirmatively exclude all other reasonable inferences from the evidence which pointed to not guilty—specifically, the inference that trauma from the accident, and not intoxication, caused his questionable actions and demeanor. In his words:

The standard of proof beyond a reasonable doubt in a criminal case requires the prosecution in a DUI case to prove that the circumstantial evidence presented infers that alcohol consumption was the cause of a driver's impairment. The circumstantial evidence, as provided by the lay testimony concerning the symptoms of Appellant and the testimony of an expert which helped interpret those observed symptoms, must prove that any post-collision impairment was due to intoxication to the exclusion of all other reasonable inferences presented by the evidence. If there exists a reasonable inference that the observed impairment was due to something other than alcohol, the court must acquit a defendant in a criminal DUI prosecution.

■ Defendant's general proposition, that "proof beyond a reasonable doubt" requires the affirmative exclusion of all reasonable exculpatory inferences, is presented without authoritative reference, and in searching we find none.

Indeed, it appears that this general proposition has been rejected by the Hawai'i Supreme Court.

■ In *State v. Bush*, 58 Haw. 340, 569 P.2d 349 (1977), the supreme court held that a case of circumstantial evidence does not require, in addition to a general instruction on "proof beyond a reasonable doubt" applicable to both direct and circumstantial evidence, instruction that the circumstantial evidence be "inconsistent with every reasonable hypothesis of innocence" or "foreclos[e] the hypothesis of innocence." *Id.* at 344, 569 P.2d at 352,

Defendant's specific proposition, that the court erred in failing to negative the inference that trauma from the accident, and not intoxication, caused his actions and demeanor, appears to be incorrect as well. *State v. Vliet*, 91 Hawai'i 288, 293–94, 983 P.2d 189, 194–95 (1999) (where a defendant claims impairment due to concurrent effects of a psychoactive substance, HRS § 291–4(a)(1) does not require proof that alcohol was the sole or exclusive cause of the impairment).

In any event, the very portion of the court's ruling relied upon by Defendant indicates that the court did indeed affirmatively exclude the trauma hypothesis:

I expect you probably were shaken up to some extent in the accident, but I don't think that that explains your performance.

That it did so after full consideration of the possibility is also evident from the record. The court explicitly acknowledged the trauma hypothesis early on in its ruling:

Now, I don't doubt that in many accident cases people are shaken up and that in many cases those—those people appear to be disoriented in ways similar to people who are disoriented from alcohol appear. I accept that. That's been my experience on the bench, and I don't doubt it.

And, if I believe that your appearance, your abilities, your skills, your motor skills, your coordination, or lack thereof on that afternoon, or early evening, were as a result of that, I wouldn't even dream of finding you guilty of the charge.

The court followed this with a detailed evaluation of the witnesses and the evidence, explaining along the way how it found the intoxication inference more credible than the trauma hypothesis, and concluded its ruling with the passage relied upon by Defendant. In the course of its exegesis, the court expressly discounted the trauma etiology opined by Defendant's key witness, Dr. Kienitz.

In our review of the record, we discern no error in the court's consideration of and conclusions from the evidence.

It appears the court utilized the correct material elements of the DUI offense,[5] and the proper standard of proof:

Mr. Ferm, in order to find you guilty I have to—I have to find that the State has proven a number of things beyond a reasonable doubt.

One, that you were operating a motor vehicle, which you clearly were. Two, that you consumed alcohol. You clearly did by your own admission. But, I also have to find that you consumed enough alcohol to, in plain English, to substantially impair your ability to drive safely. That's the test as I see it.

■ As trier of fact, the court "may draw all reasonable and legitimate inferences and deductions from the evidence adduced …, and findings of the trial court will not be disturbed unless clearly erroneous." *State v. Nelson*, 69 Haw. 461, 469, 748 P.2d 365, 370 (1987) (internal quotation marks and citations omitted).

■ "A finding of fact is clearly erroneous when (1) the record lacks substantial evidence to support the finding, or (2) despite substantial evidence in support of the finding, the appellate court is nonetheless left with a definite and firm conviction that a mistake has been made." *State v. Okumura*, 78 Hawai'i 383, 392, 894 P.2d 80, 89 (1995)(internal quotation marks and citations omitted).

5. "In order to convict Vliet of DUI, as prohibited by HRS § 291–4(a)(1), the prosecution was required to prove beyond a reasonable doubt that (1) Vliet (2) operated or assumed actual physical control of the operation of any vehicle while (3) under the influence of intoxicating liquor in an amount sufficient to impair his normal mental faculties or ability to care for himself and guard against casualty." *State v. Vliet*, 91 Hawai'i 288, 292, 983 P.2d 189, 193 (1999).

Substantial evidence as to every essential element of the crime charged is required in order to support a conviction. Substantial evidence is "credible evidence which is of sufficient quality and probative value to enable a man of reasonable caution to reach a conclusion. It is evidence which a reasonable mind might accept as adequate to support such a conclusion. And whether substantial evidence exists to support a conviction is to be determined by an appellate court upon review of the evidence adduced in the light most favorable to the prosecution." *State v. Naeole,* 62 Haw. 563, 565, 617 P.2d 820, 823 (1980) (citations omitted).

Our review of the record reveals that the court's findings of fact were not clearly erroneous and that there was substantial evidence of Defendant's guilt.

Teruya and each of the police officers who went to the scene, reported smelling an alcoholic beverage on Defendant's breath. Kahalepuna and Officers Yoshimura, Cervantes and Beam observed that Defendant was extremely unsteady in his movements. Defendant's eyes were glassy and bloodshot. Officers Yoshimura, Cervantes and Beam reported that Defendant's speech was slurred.

Furthermore, Defendant admitted to Teruya, Officer Cervantes and his own expert witness, Dr. Kienitz, that he had consumed alcohol before the accident. And the circumstances of the accident speak for themselves.

The court's rejection of Dr. Kienitz's testimony was supported by the evidence. Dr. Kienitz admitted that he was not at the accident scene and did not physically examine Defendant but rather, based his opinion upon the police reports and an interview with Defendant.

"During a criminal bench trial, trial courts are regularly called upon to consider the credibility of witnesses and weigh the evidence. We must give due deference to their ability to separate a determination of credibility and weighing of the evidence from the application of the proper standard of proof—beyond a reasonable doubt." *State v. Aplaca,* 74 Haw. 54, 65, 837 P.2d 1298, 1304–05 (1992).

We conclude, therefore, that the court did not err in applying the standard of proof, and that there was substantial evidence to support its finding of guilt.

### C. Evidence of Refusal to Take the Field Sobriety Test.

For his final point on appeal, Defendant contends the court committed reversible error by weighing against him his refusal to take the field sobriety test. An express example:

> I think your refusal to take the field sobriety test certainly is a factor here. Your explanation that you weren't very good at it, well, it's not training for the Olympics. It's not meant to be that kind of a test. That tells me something. I suppose it's akin to refusing to be in a lineup, giving—refusing to give exemplars. I think I can count that against you, and I do count that against you. I think you knew you wouldn't pass it.

At the outset, it should be noted that Defendant stipulated into evidence the police reports indicating that he refused to take the field sobriety test. *See Tabieros v. Clark Equip. Co.,* 85 Hawai'i 336, 379 n. 29, 944 P.2d 1279, 1322 n. 29 (1997) (failure to object to admission of evidence at trial will waive the point on appeal).

Defendant claims on appeal, however, that he would not have stipulated to this evidence and would have objected to its admission, had he known that the court would weigh his refusal against him.

Defendant asserts that his constitutional right against compelled self-incrimination, as guaranteed by the fifth amendment to the United States Constitution[6] and article I, section 10 of the Hawai'i State Constitution,[7] was violated when the trial court weighed his

**6.** The fifth amendment to the United States Constitution states, in pertinent part: "No person . . . shall be compelled in any Criminal Case to be a witness against himself[.]"

**7.** Article I, section 10 of the Hawai'i State Constitution states, in relevant part: "[N]or shall any person be compelled in any criminal case to be a witness against oneself."

refusal to take the field sobriety test against him.

■ Clearly, allowing the trier of fact to weigh a refusal to *testify* at trial against a criminal defendant so chills the exercise of the fundamental right to remain silent that it must be deemed fundamental error. *Griffin v. California*, 380 U.S. 609, 613–15, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). This basic concept plainly depends, however, on the existence of the fundamental right.

Defendant's argument also depends, therefore, upon his claim that the field sobriety test implicates the fundamental right against compelled self-incrimination.

In Hawai'i, at least, this is surely not the case.

■ In *State v. Wyatt*, 67 Haw. 293, 687 P.2d 544 (1984), the Hawai'i Supreme Court explained that the fifth amendment and article I, section 10 prohibit the State from compelling "communications" or "testimony" from a defendant. Deciding that the field sobriety test involves nothing more than an "exhibition of 'physical characteristics of coordination,'" the supreme court held that the State, through the field sobriety test, seeks neither "communications" nor "testimony" from a defendant. Hence the supreme court concluded that the test, *even if compelled*, does not run afoul of the constitutional prohibition against compulsory self-incrimination. *Id.* at 301–03, 687 P.2d at 550–51.

The supreme court also held that the field sobriety test does not infringe a defendant's constitutional right, under the fourth amendment to the United States Constitution and article I, section 7 of the Hawai'i State Constitution, to be secure from unreasonable searches, seizures and invasions of privacy. *Id.* at 303–06, 687 P.2d at 551–53.

Following *Wyatt*, we reason that because no right of constitutional dimension is implicated by the field sobriety test, no fundamental right was chilled by the court in weighing Defendant's refusal against him.

As he did in his arguments concerning the right to counsel, Defendant here invites us to depart from authoritative precedent on the strength of holdings from another jurisdiction.

Defendant relies primarily on a case in the Supreme Judicial Court of Massachusetts, *Com. v. McGrail*, 419 Mass. 774, 647 N.E.2d 712 (1995). The *McGrail* court held that the right against compelled self-incrimination is implicated, not by the field sobriety test itself, but by a defendant's refusal to take the test.

The *McGrail* court reached this conclusion by divining that the refusal is in all cases communicative or testimonial—that in all cases the defendant's refusal will be interpreted as a statement to the effect that, "I have had so much to drink that I know or at least suspect that I am unable to pass the test[,]" and therefore "constitutes testimonial or communicative evidence." *Id.* at 714 (internal quotation marks and citations omitted).

We question such a blanket characterization. In our view, the inference of consciousness of guilt is simply that, one of many reasonable and permissible inferences *from* evidence of refusal. It is not testimony inherent *in* the refusal.

As stated by the Supreme Court of Washington, to characterize refusal as testimonial "confuses reasonable inferences with communications." *City of Seattle v. Stalsbroten*, 138 Wash.2d 227, 978 P.2d 1059, 1063 (1999)

The *McGrail* court concluded, further, that the communication or testimony implicated by the defendant's refusal was coerced by the state even though the defendant was not required to perform the field sobriety test. The *McGrail* court reasoned that the admission of refusal evidence at trial compels a defendant to choose between two equally untenable alternatives: "take the test and perhaps produce potentially incriminating real evidence; refuse and have adverse testimonial evidence used against him at trial." *McGrail*, 647 N.E.2d at 714–15 (internal quotation marks and citations omitted). *But see Com. v. Blais*, 428 Mass. 294, 701 N.E.2d 314, 318–19 (1998)(disapproving any implication that *McGrail* establishes a constitutional right to refuse to take a field sobriety test, and holding that a person lawfully arrested

or detained may be ordered to perform the test).

The United States Supreme Court, in *South Dakota v. Neville*, 459 U.S. 553, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983), squarely confronted the fifth amendment on the issue of refusal evidence, in the context of a chemical blood-alcohol test. The Supreme Court decided that the fifth amendment was not offended by the admission of refusal evidence because in that case, the refusal was not compelled by the state, compulsion being "an ingredient· of the right[.]" *Id.* at 562, 103 S.Ct. 916 (internal quotation marks and citation omitted). The Supreme Court so held even though it recognized that the resulting dilemma puts a defendant to a difficult and unpleasant choice—to give the state potentially incriminating material or to have his refusal produced against him at trial. *Id.* at 562–64, 103 S.Ct. 916. *Cf. Pennsylvania v. Muniz*, 496 U.S. 582, 605 n. 19, 110 S.Ct. 2638, 110 L.Ed.2d 528 (1990)(citing *Neville*, introduction into evidence of criminal defendant's refusal to take breathalyzer test does not compel him to incriminate himself and is thus not derogative of the privilege; "[w]e see no reason to distinguish between chemical blood tests and breathalyzer tests for these purposes").

In the context of refusal evidence, simply put, a hard choice is not state compulsion. In light of *Wyatt* and *Neville*, we discern no viability in a conclusion a la *McGrail* that the choice Defendant faced in this case, however difficult or unpleasant, amounted to State compulsion.

Whatever the merit of its factual assumptions and conclusions might be as applied to our case, it is fair and worthwhile to note that *McGrail* was not grounded in the fifth amendment to the United States Constitution. *Id.* at 714, n. 5.

The *McGrail* court based its holding on article 12 of the Massachusetts Declaration of Rights which provides, in pertinent part:

No subject shall ... be compelled to accuse, or *furnish evidence* against himself.

*Id.* at 714 (emphasis added).

The significance of the distinction is made plain in the seminal° case *McGrail* followed,

*Opinion of the Justices to the Senate*, 412 Mass. 1201, 591 N.E.2d 1073 (1992), which noted that a majority of jurisdictions, including the United States Supreme Court, hold that refusal evidence is admissible, and do so "under the Fifth Amendment or analogous sections of their respective State Constitutions." *Id.* at 1074.

In joining a minority of jurisdictions with its contrary holding, the *Opinion* court expressly staked its ground on article 12, which "adds an additional element not found in most other jurisdictions," providing that no person shall be compelled to "furnish evidence against himself," *id.* at 1073–76, ·and which therefore warrants a more expansive interpretation regarding refusal evidence. *Id.* at 1077–78. *Cf. Stalsbroten*, 978 P.2d at 1062–64 (no fifth amendment violation in admitting evidence of a criminal defendant's refusal to take a field sobriety test, as consciousness of guilt, because the refusal is not testimonial evidence and not compelled by the state; this despite the fact that Washington's prohibition against self-incrimination, like the one in Massachusetts, provides that "[n]o person shall be compelled in any criminal case to give evidence against himself").

We again cannot accept Defendant's invitation to depart from authoritative precedent by way of foreign example. We therefore conclude that because Defendant's refusal to take the field sobriety test was neither testimonial nor compelled, the fifth amendment and article I, section 10 were not offended. *See Stalsbroten*, 978 P.2d at 1062 ("admitting evidence that a defendant refused to take a [field sobriety test] violates his right against self-incrimination only if (1) the refusal evidence is testimonial *and* (2) the evidence is impermissibly compelled by the State")(emphasis added).

In so concluding, we join the majority of jurisdictions that have considered the issue:

Our conclusion is further bolstered by the fact that the majority of courts that have considered this issue have concluded that the admission of evidence that a defendant refused to perform [a field sobriety test]

30

does not violate the defendant's right against self-incrimination. *State v. Taylor,* 648 So.2d 701 (Fla.1995); *State v. Washington,* 498 So.2d 136 (La.Ct.App.1986); [State v.]*Wright,* 116 N.M. 832, 867 P.2d 1214 (1993); *Commonwealth v. McConnell,* 404 Pa.Super. 439, 591 A.2d 288 (1991); *State v. Hoenscheid,* 374 N.W.2d 128 (S.D. 1984); *Dawkins v. State,* 822 S.W.2d 668 (Tex.Ct.App.1991); *Farmer v. Commonwealth,* 12 Va.App. 337, 404 S.E.2d 371 (1991); *State v. Mallick,* 210 Wis.2d 427, 565 N.W.2d 245 (Ct.App.1997).

*Stalsbroten,* 978 P.2d at 1065.

### V.   Conclusion.

Based upon the foregoing, the May 12, 1998 judgment is affirmed.